[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11393

_____

D.C. Docket No. 1:20-cv-00107-JPB

MICHAEL NANCE,

Plaintiff-Appellant,

versus

COMMISSIONER, GEORGIA DEPARTMENT OF CORRECTIONS,
WARDEN, GEORGIA DIAGNOSTIC AND CLASSIFICATION PRISON,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(December 2, 2020)

Before WILLIAM PRYOR, Chief Judge, MARTIN and LAGOA, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

    This appeal requires us to decide whether a method-of-execution claim that

would have the necessary effect of preventing the prisoner's execution should be

brought as a civil-rights action, 42 U.S.C. § 1983, or as a petition for a writ of habeas corpus, 28 U.S.C. § 2254. Michael Wade Nance argues that Georgia's lethal-injection protocol, as applied to his unique medical situation, violates the Eighth Amendment and that the firing squad is a readily available alternative. He sued under section 1983 for an injunction to bar the State from executing him by lethal injection—the only method of execution under Georgia law. *See* Ga. Code § 17-10-38(a). To be sure, the Supreme Court has permitted prisoners to seek relief under section 1983 when a prisoner's proposed alternative method of execution "would have allowed the State to proceed with the execution as scheduled" under current state law. *Nelson v. Campbell*, 541 U.S. 637, 646 (2004). But Nance complains that the Constitution bars Georgia from executing him by *any* method of lethal injection, regardless of the protocol. The Supreme Court has mentioned the possibility of a complaint like Nance's on three occasions and warned that it might not be cognizable under section 1983. *See Bucklew v. Precythe*, 139 S. Ct. 1112, 1128 (2019); *Hill v. McDonough*, 547 U.S. 573, 582 (2006); *Nelson*, 541 U.S. at 644. We now decide it is not. Because the injunction Nance seeks would necessarily imply the invalidity of his death sentence, his complaint must be reconstrued as a habeas petition. And because that petition is second or successive, we vacate and remand with instructions to dismiss for lack of jurisdiction.

# I. BACKGROUND

In 1993, Nance went to a bank in Gwinnett County, Georgia, pulled a ski mask over his face, threatened the tellers with a gun, and left with two pillowcases full of cash. After Nance got into his car, dye packs hidden in the stolen cash exploded. He then decided to abandon the vehicle. He crossed the street to a nearby liquor store, where he found Gabor Balogh backing his car out of a parking space. Nance ran around the front of Balogh's car, yanked open the door, and pointed his gun at Balogh. As Balogh pleaded for his life, Nance pulled the trigger and shot him dead.

A jury convicted Nance of murder in 1997, and he was sentenced to death. He was resentenced to death after a new sentencing trial in 2002, and the Georgia Supreme Court affirmed that sentence on direct appeal. The Georgia Supreme Court rejected his petition for collateral relief in 2013. Nance then filed a federal habeas petition, *see* 28 U.S.C. § 2254, and we affirmed the order denying that petition.

Nance filed this civil-rights action, *see* 42 U.S.C. § 1983, on January 8, 2020, and alleged that the State's lethal-injection protocol was unconstitutional as applied to him because of two medical issues. First, he alleged that, due to his compromised veins, he would be subjected to excruciating pain during attempts to establish venous access for his execution, that he would be subjected to painful

leakage of the injection drug even if venous access was established, and that the State's alternative methods to establish venous access would not be performed humanely. Second, he alleged that his use of gabapentin, a drug that he has been prescribed for his back pain since 2016, had altered his brain chemistry in a way that would diminish the efficacy of the lethal injection drug and leave him sensate and in extreme pain during his execution. Nance alleged that death by firing squad was a feasible and readily implemented alternative method of execution that would significantly reduce his substantial risk of severe pain. He sought a declaratory judgment as well as "injunctive relief to enjoin the [State] from proceeding with [his] execution . . . by a lethal injection."

The State moved to dismiss Nance's complaint on January 30, 2020. It argued that Nance's claim was untimely, that he failed in his complaint to allege sufficient facts to support a plausible claim for relief, and that he failed to exhaust his administrative remedies. The district court granted the State's motion to dismiss. It concluded that Nance's suit was untimely and that he failed to state a claim for relief with respect to his venous-access theory because he did not allege plausible facts establishing that his compromised veins created the requisite risk of suffering for a valid claim under the Eighth Amendment. After Nance appealed, we directed the parties to address at oral argument whether Nance's complaint

4

should be reconstrued as a habeas petition and, if so, whether it was second or successive.

## II. STANDARD OF REVIEW

We are obligated to address subject-matter jurisdiction *sua sponte*. *Mallory & Evans Contractors & Eng'rs, LLC v. Tuskegee Univ.*, 663 F.3d 1304, 1304 (11th Cir. 2011). A district court lacks subject-matter jurisdiction over a state prisoner's second or successive petition for a writ of habeas corpus absent an order from the court of appeals authorizing it to consider the petition. *Williams v. Chatman*, 510 F.3d 1290, 1295 (11th Cir. 2007).

## III. DISCUSSION

To succeed in a method-of-execution challenge under the Eighth Amendment, a prisoner "must show a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason." *Bucklew*, 139 S. Ct. at 1125 (citing *Glossip v. Gross*, 576 U.S. 863, 869–78 (2015), and *Baze v. Rees*, 553 U.S. 35, 52 (2008) (plurality opinion)). In most method-of-execution challenges, prisoners satisfy the alternative-method requirement of the *Baze-Glossip* test by alleging that the State could make changes to its lethal-injection protocol that would significantly reduce the prisoner's risk of pain. *See, e.g.*, *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1325 (11th

Cir. 2020) (prisoners alleged that single-injection protocol might reduce risk of pain and was a known and available alternative to State's three-drug protocol). Nance takes a different approach.

Nance alleges that death by firing squad is a feasible and readily implemented alternative method of execution, and he seeks an injunction barring the use of lethal injection. But Georgia law authorizes execution *only* by lethal injection. *See* Ga. Code § 17-10-38(a). It is not necessarily fatal to the merits of Nance's claim that the State does not authorize his alleged alternative method of execution. *See Bucklew*, 139 S. Ct. at 1128 ("[T]he Eighth Amendment is the supreme law of the land, and the comparative assessment it requires can't be controlled by the State's choice of which methods to authorize in its statutes."). But a court considering the merits of a complaint like Nance's must "inquire into the possibility that one State possessed a legitimate reason for declining to adopt" the alleged alternative method. *Id.* And alleging an alternative method of execution that is not authorized by the State's law not only complicates the merits of a method-of-execution challenge; it has procedural implications as well.

We divide our discussion of those procedural implications in two parts. First, we explain that Nance's complaint must be reconstrued as a habeas petition because an injunction preventing the State from executing a prisoner under its present law necessarily implies the invalidity of that prisoner's sentence. Second,

we explain that Nance's habeas petition is second or successive and that the district court lacked jurisdiction to consider it.

### A. A Section 1983 Claim for Relief That Would Prevent a State from Executing a Prisoner Under Present Law Must be Reconstrued as a Habeas Petition.

Two statutes establish the procedural landscape for method-of-execution claims. Section 1983 authorizes "an action at law, suit in equity, or other proper proceeding for redress" against any person who, under color of state law, "subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . ." 42 U.S.C. § 1983. This general language covers Nance's suit: the Eighth Amendment secures the right not to be subjected to a "method of execution [that] cruelly superadds pain to the death sentence." Bucklew, 139 S. Ct. at 1125. But a specific statute controls over a general one, Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* § 28, at 183 (2012), and the more-specific federal habeas statute, 28 U.S.C. § 2254, provides an *exclusive* remedy when it applies, *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973).

Prisoners challenging their convictions or the duration of their sentences proceed exclusively through habeas, and prisoners challenging the conditions of their confinement proceed exclusively through section 1983. "Congress has determined that habeas corpus is the appropriate remedy for state prisoners

7

attacking the validity of the fact or length of their confinement, and that specific determination must override the general terms of [section] 1983." *Id.* Because a prisoner's challenge to the fact of his conviction or duration of his sentence falls at the "core of habeas corpus," such a challenge may not be brought in a complaint under section 1983. *Id.* at 489. By contrast, a suit that does not "seek[] a judgment at odds with [a prisoner's] conviction or . . . sentence" may be brought only under section 1983. *Muhammad v. Close*, 540 U.S. 749, 754–55 (2004). "[A section] 1983 action is a proper remedy for a state prisoner who is making a constitutional challenge to the conditions of his prison life, but not to the fact or length of his custody." *Preiser*, 411 U.S. at 499. In sum, "[i]ssues sounding in habeas are mutually exclusive from those sounding in a [section] 1983 action." *McNabb v. Comm'r, Ala. Dep't of Corr.*, 727 F.3d 1334, 1344 (11th Cir. 2013).

Situating method-of-execution claims in this landscape presents a "difficult question." *Nelson*, 541 U.S. at 644. Method-of-execution claims often fall in an uncertain area near the line between section 1983 and habeas, where "[n]either the 'conditions' nor the 'fact or duration' label is particularly apt." *Id.* The Supreme Court has never held that a challenge to a method of execution was not cognizable as a complaint under section 1983. But the Court has repeatedly cautioned that there could be a type of method-of-execution challenge that would be cognizable only in habeas. And this appeal concerns exactly that type of challenge. We first

8

review the guidance provided by the Supreme Court before turning to the

unanswered question presented in this appeal.

The Supreme Court first considered the possibility that a method-of-

execution claim might be cognizable only in habeas in *Nelson v. Campbell*, 541

U.S. 637. *Nelson* involved a challenge, under section 1983, to the contemplated use

of a "cut-down" procedure to gain access to a prisoner's compromised veins for

lethal injection. *Id.* at 641–42. The State argued that the prisoner's complaint

should be construed as a habeas petition because, if successful, it would prevent

the State from carrying out his execution. *Id.* at 645. The Court rejected that

argument because the cut-down procedure was not indispensable to the execution;

in fact, the prisoner had "alleged alternatives that, if they had been used, would

have allowed the State to proceed with the execution as scheduled." *Id.* at 646. But

the Court stated in dicta that some method-of-execution challenges might still be

cognizable only in habeas: "In a State . . . where the legislature has established

lethal injection as the preferred method of execution, a constitutional challenge

seeking to permanently enjoin the use of lethal injection may amount to a

challenge to the fact of the sentence itself." *Id.* at 644 (citation omitted).

The Supreme Court revisited the boundary between section 1983 and habeas

in *Hill v. McDonough*, 547 U.S. 573. In *Hill*, a prisoner filed a complaint under

section 1983 seeking an injunction to prevent the State from proceeding with its

planned lethal-injection protocol; he alleged that the drug to be used for the first

injection was not a suitable anesthetic for the administration of the second and

third drugs. *Id.* at 578. The Supreme Court reiterated its dicta in *Nelson* that "a

constitutional challenge seeking to permanently enjoin the use of lethal injection

may amount to a challenge to the fact of the sentence itself." *Id.* at 579 (quoting

*Nelson*, 541 U.S. at 644). But the prisoner in *Hill* "concede[d] that other methods

of lethal injection the [State] could choose to use would be constitutional," *id.* at

580 (internal quotation marks omitted), and the State did not argue that "granting

[the prisoner's] injunction would leave the State without any other practicable,

legal method of executing [him] by lethal injection," *id.* Because "injunctive relief

would not prevent the State from implementing the sentence," the Court said that

"the suit as presented would not be deemed a challenge to the fact of the sentence

itself" and that it was cognizable under section 1983. *Id.* at 579–80. But the Court

left open the possibility that "recharacterizing a complaint as an action for habeas

corpus might be proper" in a method-of-execution challenge where "the relief

sought would foreclose execution." *Id.* at 582.

The most recent guidance from the Court on the question whether a method-

of-execution claim may be brought under section 1983 came last year in *Bucklew*

*v. Precythe*, 139 S. Ct. 1112. And the Court once again repeated its warnings in

*Nelson* and *Hill*. The main holding of *Bucklew* was that as-applied challenges to a

method of execution, like facial challenges, under the Eighth Amendment, must

plead an alternative method of execution. *Id.* at 1126 (citing *Glossip*, 576 U.S. at

878, and *Baze*, 553 U.S. at 61). But, the Court noted, "[a]n inmate seeking to

identify an alternative method of execution is not limited" by the *Baze-Glossip* test

under the Eighth Amendment "to choosing among those presently authorized by a

particular State's law." *Id.* at 1128. That concern was not implicated in *Bucklew*

itself, because the prisoner's alleged alternative to lethal injection was authorized

under state law. *Id.* at 1121; Mo. Rev. Stat. § 546.720. But it was nonetheless

important to clarify the point, because inferior courts—including this one—had

understood *Baze* and *Glossip* to mean that the Eighth Amendment requires a

prisoner to "identify an alternative that is 'known and available' *to the state in*

*question*," meaning that unauthorized alternatives did not satisfy the test. *Arthur v.*

*Comm'r, Ala. Dep't of Corr.*, 840 F.3d 1268, 1317 (11th Cir. 2016) (emphasis

added), *abrogated in part by Bucklew*, 139 S. Ct. 1112. Still, the Supreme Court

made clear that the *Baze-Glossip* test is not friendly to an "inmate [who] is more

interested in . . . delaying his execution" than in "avoiding unnecessary pain."

*Bucklew*, 139 S. Ct. at 1129. And to avoid opening the floodgates to abusive

litigation based on its clarification of the alternative-method requirement, the Court

cautioned that "existing state law might be relevant to determining the proper

procedural vehicle for the inmate's claim," 139 S. Ct. at 1128, even if it had no bearing on the prisoner's substantive right under the Eighth Amendment.

And so, the Supreme Court made it clear in *Nelson*, *Hill*, and *Bucklew* that it is an open question whether section 1983 can support a claim that would "foreclose the State from implementing [a] lethal injection sentence under present law." *Hill*, 547 U.S. at 583; *see also Bucklew*, 139 S. Ct. at 1128 (relying on *Hill*). The dissent says that we "assume the role of the Supreme Court" by "anticipat[ing] that the Supreme Court has overruled its own precedent." Dissenting Op. at 29, 38. But the Supreme Court was clear in *Nelson*, *Hill*, and *Bucklew* that it has no precedent on this question to overrule. The Supreme Court has left it for us to decide in the first instance whether a claim for relief that would prevent a state from implementing a death sentence under its current law must be brought as a civil complaint under section 1983 or as a habeas petition. This appeal squarely presents that question.

Nance argues that circuit precedent establishes that his claim is cognizable under section 1983 and that the Supreme Court's parenthetical in *Bucklew* is only "a curiosity" that does not undermine that precedent. But the decisions he cites are inapposite. Nance argues that in *McNabb*, 727 F.3d 1334, we held that method-of-execution challenges are never cognizable in habeas. We disagree. *McNabb* involved a challenge to the State's lethal-injection protocol based on the argument that "an ineffective first drug or improper administration of a first drug in a three-

drug protocol would violate the constitution." *Id.* at 1344. That claim is

indistinguishable from the claim in *Hill* that the Supreme Court allowed to proceed

under section 1983. 547 U.S. at 578.

We explained in *McNabb* that "*[u]sually*, . . . challenges [to] a state's

method of execution . . . [are] not an attack on the validity of [a prisoner's]

conviction and/or sentence," 727 F.3d at 1344 (emphasis added), and accordingly

held that "a [section] 1983 lawsuit, not a habeas proceeding, is the proper way to

challenge lethal injection *procedures*," *id.* (alteration adopted) (emphasis added)

(internal quotation marks omitted). *McNabb* did not announce a categorical rule for

all method-of-execution challenges; it addressed only challenges to specific lethal

injection *procedures*, and its holding clearly left open the question this appeal

presents.

Nance also argues that we considered a complaint under section 1983 that

would have prevented the State from carrying out a death sentence under present

law in *Ledford v. Commissioner, Georgia Department of Corrections*, 856 F.3d

1312 (11th Cir. 2017), but we never considered whether the complaint should have

been construed as a habeas petition. Nance is correct that his complaint is similar

to the prisoner's complaint in *Ledford*; both Nance and Ledford argued that

gabapentin would have a bad interaction with the State's execution drug, *id.* at

1317, and both alleged the firing squad as an alternative method of execution

13

rather than offer changes to the State's injection protocol, *id.* at 1317–18. But we did not hold in *Ledford* that a complaint that would leave a State unable to carry out a death sentence could be brought under section 1983.

We denied relief in *Ledford* for a multitude of independently sufficient reasons: we concluded that the prisoner's complaint was untimely, *id.* at 1316; that he did not establish a substantial risk of severe pain for his substantive right under the Eighth Amendment, *id.* at 1317; that his firing-squad argument did not satisfy the substantive requirement under the Eighth Amendment that he plead an alternative method of execution that was feasible and readily implemented under state law, *id.* at 1317–18 (citing *Arthur*, 840 F.3d at 1315–18, *abrogated in part by Bucklew*, 139 S. Ct. 1112); and that he had not established entitlement to the equitable relief requested in his last-minute challenge, *id.* at 1319. A decision that does not catalog every independently sufficient reason for denying relief does not create a binding precedent with respect to the alternative reasons it does not discuss. This rule is particularly important in the context of an unaddressed jurisdictional defect like lack of permission to file a second-or-successive habeas petition. 28 U.S.C. § 2244(b)(3)(A); *Lewis v. Casey*, 518 U.S. 343, 352 n.2 (1996) ("[W]e have repeatedly held that the existence of unaddressed jurisdictional defects has no precedential effect."). *Ledford*'s silence on the prisoner's use of section 1983 instead of habeas has no precedential effect.

14

We failed in *Ledford* to recognize the jurisdictional error in allowing a prisoner to bring a section 1983 claim that would have left the State unable to carry out his death sentence because we believed—erroneously, as *Bucklew* later revealed—that no such claim even existed under the Eighth Amendment as a matter of substantive law. When we decided *Ledford* our precedents held that the Eighth Amendment required prisoners to allege an alternative method of execution authorized under state law. *See Arthur*, 840 F.3d at 1316, *abrogated in part by Bucklew*, 139 S. Ct. 1112. Based on our misunderstanding of the alternative-method requirement under *Baze* and *Glossip*, we ruled in *Ledford* that the prisoner failed to state a claim because his complaint did not allege an alternative method *of lethal injection*, and that his firing-squad argument was not a permissible alternative to doing so. *Ledford*, 856 F.3d at 1317–18 (citing *Arthur*, 840 F.3d at 1316). We do not have a binding precedent establishing the proper vehicle for a claim for relief that would prevent a state from implementing a death sentence under its current law.

A complaint seeking an injunction against the only method of execution authorized in a state must be brought in a habeas petition, because such an injunction necessarily implies the invalidity of the prisoner's death sentence. "The line of demarcation between a [section] 1983 civil rights action and a [section] 2254 habeas claim is based on the effect of the claim on the inmate's . . .

sentence." *McNabb*, 727 F.3d at 1344 (internal quotation marks omitted). "[I]f the relief sought by the inmate would either invalidate his conviction or sentence or change the nature or duration of his sentence, the inmate's claim must be raised in a [section] 2254 habeas petition, not a [section] 1983 civil rights action." *Hutcherson v. Riley*, 468 F.3d 750, 754 (11th Cir. 2006).

Because Nance's requested relief would prevent the State from executing him, implying the invalidity of his death sentence, it is not cognizable under section 1983 and must be brought in a habeas petition. This conclusion follows from the decisions in *Heck v. Humphrey*, 512 U.S. 477 (1994), and *Edwards v. Balisok*, 520 U.S. 641 (1997), in which the Supreme Court distinguished between complaints under section 1983 and habeas petitions. Although the *Heck* line of cases involved civil-rights actions for damages, the Supreme Court has suggested that the logic of *Heck* also applies in the context of method-of-execution challenges. In both *Nelson* and *Hill*, the Supreme Court made clear that its decision was "consistent with *Heck*'s and *Balisok*'s approach to damages actions that implicate habeas relief," *Hill*, 547 U.S. at 583 (citing *Nelson*, 541 U.S. at 646–47), and suggested that the parallel analysis between the two fields followed from the fact that "civil rights damages actions . . . , like method-of-execution challenges, fall at the margins of habeas," *Nelson*, 541 U.S. at 646.

In *Heck*, the Supreme Court proceeded from the fact "that [section] 1983 creates a species of tort liability," 512 U.S. at 483 (internal quotation marks omitted), and explained that the relationship of section 1983 to the common law of torts comes with limitations on the kinds of claims cognizable under it. Citing "the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments," *id.* at 486, the Court held that "when a state prisoner seeks damages in a [section] 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence" and, if so, dismiss the complaint unless the plaintiff showed a favorable termination of the underlying criminal proceeding, *id.* at 487. The Court clarified this principle in *Balisok*, where it held that a "claim for declaratory relief and money damages, based on allegations . . . that necessarily imply the invalidity of the punishment imposed, is not cognizable under [section] 1983." 520 U.S. at 648.

In the light of the principle distilled in *Heck* and *Balisok*, the Supreme Court in *Hill* described the inquiry for determining whether a method-of-execution claim is cognizable under section 1983 as being "whether a grant of relief to the inmate would *necessarily* bar the execution." 547 U.S. at 583 (emphasis added). The word "necessarily" is key to the *Heck* inquiry, and it explains why Nance's complaint is different from the prisoners' complaints in *Nelson* and *Hill*. We have noted that the

17

concept of "logical necessity . . . is at the heart of the *Heck* opinion," *Dyer v. Lee*, 488 F.3d 876, 879 (11th Cir. 2007), and explained that this "emphasis on logical necessity is a result of the Court's underlying concern in *Heck*: that [section] 1983 and the federal habeas corpus statute . . . were on a collision course," *id.* at 880 (internal quotation marks omitted). The *Heck* inquiry prevents prisoners from making "an 'end-run' around habeas," but when there is no necessary logical connection between relief under section 1983 and the negation of a conviction or sentence, there is no concern about an end-run and no need to apply *Heck*. *Id.* Both *Nelson* and *Hill* are examples of decisions that did not implicate the concern expressed in *Heck* about end-runs around the habeas statutes.

The Supreme Court allowed the complaints under section 1983 in *Nelson* and *Hill* to proceed because the relief sought in each case did not *necessarily* imply the invalidity of the prisoner's death sentence, even if, as the State argued in *Hill*, the claim would "frustrate the execution as a practical matter." 547 U.S. at 583. The requested injunction against the use of a cut-down procedure for venous access in *Nelson*, 541 U.S. at 641–42, did not necessarily imply the invalidity of the prisoner's death sentence because the fact "[t]hat venous access is a necessary prerequisite [to carrying out a death sentence] does not imply that a particular means of gaining such access is likewise necessary," *id.* at 645. The State could potentially carry out the death sentence with a different method of venous access.

And the requested injunction against the use of an allegedly inadequate anesthetic as part of the injection protocol in *Hill*, 547 U.S. at 578, did not necessarily imply the invalidity of the prisoner's death sentence because the "obvious necessity" of "the injection of lethal chemicals" does not by itself mean that a particular combination of drugs chosen by the State is a necessary prerequisite to carrying out a death sentence, *id.* at 581. That is, the injunction would not ban the state from carrying out the death sentence using a different injection protocol.

In this appeal, unlike in *Nelson* and *Hill*, a judgment in Nance's favor *would* imply the invalidity of his death sentence—not only as a practical matter, but as a matter of logical necessity. In his complaint, Nance asked the district court to "[g]rant injunctive relief to enjoin the [State] from proceeding with [his] execution . . . by a lethal injection." Lethal injection is necessary to carry out any death sentence in Georgia, because lethal injection is the *only* method of execution authorized under Georgia law. *See* Ga. Code § 17-10-38(a). Unlike the injunctions in *Nelson* and *Hill*, the injunction Nance seeks would prevent his execution from being carried out, necessarily implying the invalidity of his death sentence.

There is no way to read Nance's complaint to avoid the collision between section 1983 and habeas that the Supreme Court contemplated in *Heck*, and given that conflict, the specific terms of the habeas statute must override the general terms of section 1983. *See Preiser*, 411 U.S. at 490. Habeas and section 1983 are

19

mutually exclusive. *McNabb*, 727 F.3d at 1344. And based on the lines drawn by the Supreme Court in *Heck*, *Nelson*, and *Hill*, Nance's claim falls beyond the outer border of section 1983 and is cognizable only in habeas.

To be sure, a judgment in Nance's favor implies the invalidity of his sentence as a matter of logical necessity only if we take Georgia law as fixed. Even if Nance prevails in this suit, the State could respond by enacting a law authorizing execution by firing squad. And Nance does not contest—at least for now—that the State could constitutionally carry out his death sentence if it did so.

But section 1983 complaints are "civil tort actions," which means that they are not "appropriate vehicles for challenging the validity of outstanding criminal judgments." *Heck*, 512 U.S. at 486. So it is not our place to entertain complaints under section 1983 that ask us to force a State to fundamentally overhaul its system of capital punishment. "[T]he Constitution affords a 'measure of deference to a State's choice of execution procedures.'" *Bucklew*, 139 S. Ct. at 1125 (quoting *Baze*, 553 U.S. at 52 n.2).

For purposes of determining whether a method-of-execution challenge sounds in section 1983 or habeas, a federal court must accept as fixed a state law providing a facially constitutional method of execution. That is particularly so when a would-be section 1983 complainant insists that the State resort to a method of execution that it has already determined is less humane than the alternatives. *See*

*id.* at 1128 ("[A] court [must] inquire into the possibility that one State possessed a legitimate reason for declining to adopt the protocol of another."). If we sanction Nance's decision to proceed under section 1983 by refusing to take the State's law as fixed, we must effectively interpret Nance's complaint as a request for an injunction directing the State to either enact new legislation or vacate his death sentence. By doing so, we invite a collision with more than the habeas statute. *Cf. New York v. United States*, 505 U.S. 144, 188 (1992).

No matter how you read it, Nance's complaint attacks the validity of his death sentence. It is cognizable only as a habeas petition, and we must evaluate it as such.

### B. Nance's Petition is Second or Successive.

Because Nance's complaint is a habeas petition, we must determine whether it is second or successive. When a prisoner effectively, even if not formally, raises a new habeas claim without first obtaining this Court's permission to file a second or successive petition, the district court lacks subject-matter jurisdiction to consider the petition. *Franqui v. Florida*, 638 F.3d 1368, 1375 (11th Cir. 2011). Nance did not move this Court for permission to file his petition, so the district court lacked jurisdiction if the petition was second or successive. *See* 28 U.S.C. § 2244(b)(3)(A).

Under the normal rule, Nance's petition is second or successive. *See Patterson v. Sec'y, Fla. Dep't of Corr.*, 849 F.3d 1321, 1325 (11th Cir. 2017). Nance already brought a habeas petition contesting his death sentence. *Nance v. Warden, Ga. Diagnostic Prison*, 922 F.3d 1298 (11th Cir. 2019). As we have explained above, he effectively contested the validity of that sentence a second time when he brought this section 1983 action. Because Nance did not move this Court for permission to file a second or successive petition, section 2244(b) required the district court to dismiss the suit for lack of jurisdiction. Even if Nance had asked us to allow his second or successive petition, we could not have done so because the petition does not satisfy either of the requirements of section 2244(b)(2). Nance's petition does not rely on a new rule of constitutional law made retroactive to his case by the Supreme Court, 28 U.S.C. § 2244(b)(2)(A), nor is it predicated on newly discovered facts establishing that no reasonable factfinder could have found him guilty, *id.* § 2244(b)(2)(B).

Nance argues that a different second-or-successive rule controls as-applied method-of-execution claims, and that his petition is not second or successive because he filed it as soon as his claim was ripe. He relies primarily on the Supreme Court's decision in *Panetti v. Quarterman*, 551 U.S. 930 (2007). In *Panetti*, a prisoner filed a habeas petition raising issues about his competency to stand trial and waive his right to counsel, but not his competency to be executed.

*Id.* at 937. Those claims were denied. *Id.* He later filed another habeas petition in which he argued that he was insane and, therefore, not competent to be executed under *Ford v. Wainwright*, 477 U.S. 399 (1986). *Panetti*, 551 U.S. at 934–35, 938. The State argued that because the prisoner's first habeas petition failed to raise a *Ford* claim, his second-in-time petition—which did raise a *Ford* claim—was second or successive. *Id.* at 942. The Supreme Court rejected the State's interpretation of section 2244 because it would put prisoners in the position of either "forgo[ing] the opportunity to raise a *Ford* claim in federal court[,] or rais[ing] the claim in a first federal habeas application . . . even though it [would be] premature." *Id.* at 943. The Court reasoned that "Congress did not intend the provisions of [the Antiterrorism and Effective Death Penalty Act] addressing 'second or successive' petitions to govern a filing in the unusual posture presented [by] a [section] 2254 application raising a *Ford*-based incompetency claim filed as soon as that claim is ripe," *id.* at 945, and it held that "[t]he statutory bar on 'second or successive' applications does not apply to a *Ford* claim brought in an application filed when the claim is first ripe," *id.* at 947.

As we have observed, "the [Supreme] Court was careful to limit its holding [in *Panetti*] to *Ford* claims." *Tompkins v. Sec'y, Dep't of Corr.*, 557 F.3d 1257, 1259 (11th Cir. 2009). But Nance says that this appeal is indistinguishable from *Panetti* because his petition also involves a challenge based on facts existing at the

time of a contemplated execution and brought as soon as that claim was ripe. Nance's reliance on *Panetti* assumes that the decision established a rule that a prisoner is entitled to one full and fair opportunity to challenge his sentence through habeas, and that the accrual of a new challenge entitles him to a new opportunity to file a petition.

The Supreme Court rejected Nance's reading of *Panetti* in *Magwood v. Patterson*, 561 U.S. 320 (2010). In *Magwood*, a prisoner was sentenced to death at a second sentencing trial after successfully challenging his original death sentence through habeas. *Id.* at 326. He filed another habeas petition, which was dismissed as second or successive because it challenged an alleged error repeated in the first and second sentencing trials that could have been challenged in the first habeas petition. *Id.* at 328–29. The Supreme Court reversed, *id.* at 343, reasoning that the "first [habeas petition] challenging [a] new judgment cannot be 'second or successive' such that [section] 2244(b) would apply," *id.* at 331. Four dissenters objected that the Court's opinion did not apply the rule in *Panetti* as they understood it: that "to determine whether an application is 'second or successive,' a court must look to the substance of the claim the application raises and decide whether the petitioner had a full and fair opportunity to raise the claim in the prior application." *Id.* at 345 (Kennedy, J., dissenting). But the Court did more than just apply a different rule. In fact, the Court's opinion explicitly rejected the "full and

24

fair opportunity" interpretation of section 2244(b) that Nance would extract from *Panetti*.

Nance and the *Magwood* dissenters' "full and fair opportunity" interpretation of *Panetti*, the Court explained, leads to "fundamental error." *Id.* at 335. "Under the . . . 'one opportunity' rule, . . . the phrase 'second or successive' would not apply to a claim that the petitioner did not have a full and fair opportunity to raise previously." *Id.* (emphasis omitted). That result is erroneous, the Court recognized, because the language of section 2244 describes petitions with claims based on intervening caselaw or newly discovered facts as second or successive. *See* 28 U.S.C. § 2244(b)(2). And it does so despite the fact that "[i]n either circumstance, a petitioner cannot be said to have had a prior opportunity to raise the claim," *Magwood*, 561 U.S. at 335, which would make them not second or successive under a "one opportunity" rule. The "full and fair opportunity" reading of *Panetti* is foreclosed by the text of the statute. *Magwood* did not directly undermine *Panetti* by deciding that a "[habeas petition] challenging the same state-court judgment must always be second or successive." *Id.* at 335 n.11. But the Court did reject a broad reading of *Panetti*'s exception to the second-or-successive bar in section 2244, and the *Magwood* dissenters lamented that, in doing so, the Court "confin[ed] the holding of *Panetti* to the facts of that case." *Id.* at 350 (Kennedy, J., dissenting).

*Panetti*'s holding is tailored to the context of *Ford* claims. And because the considerations informing the Supreme Court's adoption of the rule in that context do not obtain in the context of as-applied method-of-execution challenges, we do not extend *Panetti* in this appeal. *Panetti* was motivated by a desire to avoid putting prisoners in the position of either "forgo[ing] the opportunity to raise a *Ford* claim in federal court[,] or rais[ing] the claim in a first federal habeas application . . . even though it [would be] premature." *Panetti*, 551 U.S. at 943. That concern is far more serious in the *Ford* context than it is in the context of an as-applied method-of-execution claim. A *Ford* claim always challenges the fact of a death sentence itself, *see Ford*, 477 U.S. at 410 ("The Eighth Amendment prohibits the State from inflicting the penalty of death upon a prisoner who is insane."), and must therefore be brought in a habeas petition and never under section 1983, *see Nelson*, 541 U.S. at 643 ("[Section] 1983 must yield to the more specific federal habeas statute . . . where an inmate seeks injunctive relief challenging the fact of his conviction or the duration of his sentence."). Without the ability to file an additional habeas petition, a prisoner whose mental health deteriorates after his first habeas petition has no way to bring a *Ford* claim in federal court. In contrast, a prisoner whose physical health deteriorates following his first habeas petition may rely on section 1983 to minimize the risk of pain during his execution—with the caveat that he seek relief designed to accommodate

his state's authorized methods of execution to his unique health factors instead of an injunction that would effectively serve as a permanent stay of his execution.

Nance could have filed a complaint under section 1983 to demand changes to the State's lethal-injection protocol that would accommodate his weak veins and past gabapentin usage and thus mitigate the risk of a needlessly painful execution. Instead, he demanded death by firing squad and dared the legislature to call his bluff. Applying the normal test for a second or successive habeas petition instead of the special *Panetti* rule does not prevent any prisoner from bringing a method-of-execution challenge in federal court—"assuming, of course, that [he] is more interested in avoiding unnecessary pain than in delaying his execution." *Bucklew*, 139 S. Ct. at 1129. The fact that the Antiterrorism and Effective Death Penalty Act prevents prisoners from bringing second or successive petitions designed to undermine the effectiveness of the death penalty is part of the statutory design, not a justification for extending *Panetti*.

The ordinary meaning of a second or successive petition applies in this appeal. Nance already challenged his death sentence in habeas once. This petition is second or successive, and the district court should have dismissed it for lack of jurisdiction under section 2244(b).

## IV. CONCLUSION

We **VACATE** the order dismissing Nance's complaint as untimely and

**REMAND** with instructions to dismiss for lack of jurisdiction.

MARTIN, Circuit Judge, dissenting:

Michael Wade Nance is a Georgia prisoner who has been sentenced to die for his crime. Georgia law establishes a protocol for taking Mr. Nance's life by lethal injection. For death penalty cases, one would expect federal courts to respect precedent and deliver predictability. Yet the majority's ruling offers chaos instead—not only for Mr. Nance, but for everyone on death row in Georgia, Alabama, and Florida. This opinion creates chaos because it plainly violates at least two principles firmly established by Supreme Court and Eleventh Circuit precedent. Specifically the majority opinion violates the well-established principles from our precedent that: (1) require method of execution claims to be brought as claims pursuant to 42 U.S.C. § 1983; and (2) instruct federal courts of appeals not to anticipate that the Supreme Court has overruled its own precedent, but instead to wait for the Court to expressly tell us it has done so. Surely it is the role of the courts to provide predictable and reliable processes for those facing their death at the hands of the State. We have failed to perform that role here.

Mr. Nance brought suit under 42 U.S.C. § 1983 seeking to have the District Court order the Defendants, the Commissioner of the Georgia Department of Corrections and the Warden of Georgia Diagnostic and Classification Prison, not to execute him using Georgia's current execution policies, because doing so would violate his Eighth and Fourteenth Amendment rights. Mr. Nance alleges there is a

substantial risk that executing him according to Georgia's lethal injection protocol will "lead[] to a prolonged execution that will produce excruciating pain" because his veins are "extremely difficult to locate through visual examination, and those veins that are visible are severely compromised and unsuitable for sustained intravenous access."

Notably, the mistakes with Mr. Nance's case did not begin in our court. The District Court dismissed Mr. Nance's complaint under Federal Rule of Civil Procedure 12(b)(6), which requires a court to accept all factual allegations in the complaint as true and "draw all reasonable inferences in the plaintiff's favor." West v. Warden, Comm'r, Ala. DOC, 869 F.3d 1289, 1296 (11th Cir. 2017) (applying Rule 12(b)(6) standard to § 1983 suit challenging the constitutionality of Alabama's lethal injection protocol). The District Court did quite the opposite here, conducting its own evaluation of Mr. Nance's claims and finding, for example, that his claims were "false." When this type of mistake happens in a district court, Eleventh Circuit precedent requires this Court to conduct a de novo review to determine whether the plaintiff has alleged facts that, if true, would state a method of execution claim (and, if so, reverse the District Court's dismissal). See id. at 1300–01. Yet Mr. Nance has not received the benefit of this well-established process.

It is from this obvious error made by the District Court that Mr. Nance appealed.  But rather than litigate this issue as expected, the lawyers handling this case were seemingly blindsided by a direction from this Court to be prepared to answer whether Mr. Nance properly brought his claim under § 1983, or whether his claim "amount[s] to a challenge to the fact of his sentence itself that must be reconstrued as a habeas petition."  Counsels' surprise was evidenced, for example, by a statement from counsel for Georgia who told us, "candidly," at oral argument, that "this was a situation that until we got this order from the Court, we had – we had grown accustomed to dealing with these in [§] 1983."  See Oral Argument Recording at 26:58–27:32 (Oct. 14, 2020).  Mr. Nance and his attorneys rose to this unexpected challenge and offered several examples of why construing Nance's claim as a habeas petition is error under Eleventh Circuit precedent.  See id. at 12:45–15:06.  Nevertheless the majority opinion departs from our precedent.  The majority justifies its disregard for precedent by saying the Supreme Court has "mentioned the possibility" that a complaint like Mr. Nance's "might not be cognizable" under § 1983.  See Maj. Op. at 2.

I regret that I must dissent in what should have been a case we easily remanded to the District Court so it could correct its errors.

31

## I.

Georgia law provides that the single method for executing death row prisoners is lethal injection.  See O.C.G.A. § 17-10-38(a).  On its own, the majority raised the issue of whether Mr. Nance's § 1983 claim challenging Georgia's lethal injection protocol is actually a challenge to the fact of his sentence such that it must be construed as a habeas petition.  The correct answer is a resounding no. Mr. Nance is not saying he should not be executed.  He has apparently accepted his fate.  Rather, he is merely asking our court to direct the State to execute him by a different method because the State's lethal injection method violates his constitutional rights.

The majority opinion makes several related errors in ruling on Mr. Nance's action that result in the creation of a new category of cases—subject to new procedural rules—not recognized by the Supreme Court.  The majority does away with the established line of demarcation between a § 1983 civil rights action and a habeas petition.  See Maj. Op. at 15–20.  In doing so, it calls this Court's decision in Ledford v. Commissioner, Georgia Department of Corrections, 856 F.3d 1312 (11th Cir. 2017), "erroneous[]," and proceeds to dismiss Ledford's substantive analysis in an effort to support its procedural conclusion.  Maj. Op. at 15; see id. at 13–15.  But for all the majority's talk of distinguishing the substantive requirements of Eighth Amendment claims from the rights and remedies in § 1983

32

actions, the majority can point to no concrete holding—in any decision by the

Supreme Court or this Circuit—that supports today's decision requiring Mr. Nance

to bring his Eighth Amendment method-of-execution claim by way of a habeas

petition.

## A. MR. NANCE HAS ALLEGED A FEASIBLE, READILY IMPLEMENTED ALTERNATIVE METHOD FOR HIS EXECUTION UNDER BUCKLEW.

To begin, the Supreme Court's ruling in Bucklew does not support the

majority's holding that Mr. Nance's claim must be brought in a habeas petition.

Neither does any other Supreme Court case.  To the contrary, ample binding

precedent compels us to conclude that method of execution claims must be brought

in a § 1983 action.  See, e.g., Nelson v. Campbell, 541 U.S. 637, 642, 124 S. Ct.

2117, 2122 (2004) (reversing this Court's holding "that § 1983 claims challenging

the method of execution necessarily sound in habeas"); Hill v. McDonough, 547

U.S. 573, 576, 578, 126 S. Ct. 2096, 2100–01 (2006) (reversing this Court's

holding that the § 1983 action was a successive habeas petition because the suit

was "comparable in its essentials" to Nelson); Baze v. Rees, 553 U.S. 35, 52, 128

S. Ct. 1520, 1532 (2008) (plurality opinion) (holding that in a § 1983 action,

plaintiffs are required to plead and prove a known and available alternative in order

to state an Eighth Amendment claim); Glossip v. Gross, 576 U.S. 863, 879, 135 S.

Ct. 2726, 2738 (2015) (characterizing Hill as holding "that a method-of-execution

claim must be brought under § 1983 because such a claim does not attack the

validity of the prisoner's conviction or death sentence"); Tompkins v. Sec'y, Dep't of Corr., 557 F.3d 1257, 1261 (11th Cir. 2009) (per curiam) ("A § 1983 lawsuit, not a habeas proceeding, is the proper way to challenge lethal injection procedures."); Valle v. Singer, 655 F.3d 1223, 1229 n.6 (11th Cir. 2011) (per curiam) (affirming District Court's finding that "Valle challenges the constitutionality of the execution procedure he is scheduled to undergo.  Such challenges are appropriately brought under § 1983."); Boyd v. Warden, Holman Corr. Facility, 856 F.3d 853, 865 (11th Cir. 2017) ("Following Nelson and Hill, we have entertained method-of-execution challenges to specific aspects of a state's lethal injection protocol pursuant to § 1983.").  Even in the face of all of this precedent, the majority opinion relies on dicta in Bucklew to reach the opposite conclusion.

Bucklew did two things.  It affirmed that a person bringing a method of execution claim—whether a facial challenge or an as-applied challenge—must meet the requirements set out by the Supreme Court in Baze-Glossip.  Bucklew, 139 S. Ct. at 1122, 1129.  To that end, Bucklew said that a prisoner "seeking to identify an alternative method of execution [under the Baze-Glossip test] is not limited to choosing among those [methods of execution] presently authorized by a particular State's law."  Id. at 1128 (emphases added).  Instead, "a prisoner may point to a well-established protocol in another State as a potentially viable option."

34

Id.  In this way, the Supreme Court gave substantive guidance in Bucklew for what is required to state a method of execution claim.  It said "the Eighth Amendment is the supreme law of the land, and the comparative assessment it requires can't be controlled by the State's choice of which methods to authorize in its statutes."  Id. "In light of this," and recognizing that the burden to show this prong is often "overstated," the Supreme Court saw "little likelihood that an inmate facing a serious risk of pain will be unable to identify an available alternative."  Id. at 1128–29.

Of course, Bucklew also said that "existing state law might be relevant to determining the proper procedural vehicle for the inmate's claim."  Id. at 1128 (emphasis added).  On this topic, it cited Hill and referenced, in a parenthetical, the idea that "if the relief sought in a 42 U.S.C. § 1983 action would 'foreclose the State from implementing the [inmate's] sentence under present law,' then 'recharacterizing a complaint as an action for habeas corpus might be proper.'"  Id. (alteration in original) (quoting Hill, 547 U.S. at 582–83, 126 S. Ct. at 2103).  The majority opinion, and the resulting loss of this appeal by Mr. Nance, is based on this obscure reference in Bucklew.

Yet nothing in Bucklew, nor in any other Supreme Court case I am aware of, says that when a plaintiff points to an alternative method of execution not

35

expressly codified under state law, that plaintiff's case <u>must</u> sound in habeas.[1]  The Supreme Court has simply never ruled that method-of-execution claims must—or even should—be brought by way of a habeas petition.  Nevertheless the majority appears to have carved out a new procedural requirement based on this parenthetical citation in <u>Bucklew</u>.  In so doing, the majority ignores at least two key principles.  First, courts may not anticipate that the Supreme Court will overrule its own precedent.  Second, <u>Bucklew</u> (parenthetical included) does not require method-of-execution claims to be brought in habeas.

Neither does the majority's opinion appropriately account for this Circuit's test for determining whether a claim is properly brought in a civil action or in a habeas petition.  Our Circuit precedent has set the "line of demarcation between a § 1983 civil rights action and a § 2254 habeas claim."  <u>Hutcherson v. Riley</u>, 468 F.3d 750, 754 (11th Cir. 2006).  That precedent called upon this panel to look at the effect Mr. Nance's claim will have on his sentence.  We are required to ask, on the one hand, does Mr. Nance seek to invalidate his conviction or sentence, or to change the nature or duration of his sentence?  <u>Id.</u>; <u>see also</u> <u>Magwood v. Patterson</u>,

---

[1] A plurality of the Supreme Court could have done so in <u>Baze</u>, when the plaintiff challenged Kentucky's method of execution, which statutorily required death sentences "be executed by continuous intravenous injection of a substance or combination of substances sufficient to cause death."  Ky. Rev. Stat. Ann. § 431.220(1)(a); <u>see</u> 553 U.S. at 44, 128 S. Ct. at 1527–28.  Yet <u>Baze</u> said nothing at all about habeas.  <u>See</u> <u>id.</u> at 56, 128 S. Ct. at 1534 (holding that Kentucky's failure to adopt the proposed alternatives does not, by itself, demonstrate that the execution procedure is cruel and unusual).

561 U.S. 320, 332, 130 S. Ct. 2788, 2797 (2010) ("A § 2254 petitioner is applying for something: His petition seeks invalidation (in whole or in part) of the judgment authorizing the prisoner's confinement." (quotation marks and emphases omitted)); Edward v. Balisok, 520 U.S. 641, 648, 117 S. Ct. 1584, 1589 (1997) (explaining that only those claims that "necessarily imply the invalidity of the punishment imposed" are not cognizable under § 1983 (emphasis added)).  Or on the other hand, does Mr. Nance seek to change the "'circumstances of his confinement'"? Hutcherson, 468 F.3d at 754 (quoting Hill, 547 U.S. at 579, 126 S. Ct. at 2101). For me, the remedy Mr. Nance seeks best fits into the category of one relating to the circumstances of his confinement.  He simply is not seeking to "invalid[ate] a particular death sentence."  See Johnson v. Bredesen, 558 U.S. 1067, 130 S. Ct. 541, 543 (2009) (mem.) (Stevens, J., respecting the denial of certiorari).  Mr. Nance does not challenge or dispute that the State can go forward with his execution.  He is asking that it do so "'by simply altering its method of execution.'"  Id. (quoting Nelson, 541 U.S. at 644, 124 S. Ct. at 2123).

When properly applied to Mr. Nance's case, the "line of demarcation" test is fatal to the analysis in the majority opinion.  But the majority makes almost no effort to analyze Mr. Nance's case in this way.  Rather, it summarily concludes that because Mr. Nance pointed to an alternative method of execution authorized by other states, we must interpret his complaint "as a request for an injunction

directing the State [of Georgia] to either enact new legislation or vacate his death sentence," which "would prevent the State from executing him." See Maj. Op. at 16, 21. Mr. Nance's case is not the one portrayed by the majority.

## B. THE MAJORITY OPINION CREATES A NEW PROCEDURE FOR BRINGING A METHOD-OF-EXECUTION CLAIM.

The majority seems to assume the role of the Supreme Court here, because it creates new requirements for method-of-execution claims. Again, it does this despite the precedent I've cited that requires these claims to be brought in a § 1983 action. See Agostini v. Felton, 521 U.S. 203, 237, 117 S. Ct. 1997, 2017 (1997) ("[I]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." (quotation marks omitted)); Evans v. Sec'y, Fla. Dep't of Corr., 699 F.3d 1249, 1264 (11th Cir. 2012) ("[W]e have always been careful to obey the supreme prerogative rule and not usurp the Supreme Court's authority to decide whether its decisions should be considered overruled."). The State of Georgia was not the one to suggest Mr. Nance's case requires this new procedure. See Oral Argument Recording at 26:58–27:32. Indeed, Georgia acknowledged that the issue (of whether a method-of-execution claim should be brought in a habeas petition) was not before the Supreme Court in Bucklew. See id. As if more support were needed, this underscores how the majority has acted

38

with an <u>absence</u> of precedent to support its ruling.  The job of our panel was to read the plain language of <u>Bucklew</u> and apply it as binding precedent, like this Court has done in so many cases before.  Instead, the panel itself raised a new issue for Mr. Nance's case—theorizing a novel outcome before the parties had even argued their case.  As a result, method-of-execution claims must now be handled differently in this Circuit.  And as for Mr. Nance, this panel has deprived him of a claim he had every right to pursue.  With this loss, Mr. Nance's execution will arrive more swiftly, and without his method-of-execution claims ever having been examined beyond a mere read of his pleadings.

Neither does Mr. Nance's case offer up such a unique set of facts that we must depart from the analysis both this Court and the Supreme Court have applied in every previous method-of-execution case.  And today's ruling disturbs a well-settled rule of law in a way that does not clarify, but instead harms existing Supreme Court precedent.  The majority opinion will sow confusion.  A prisoner can no longer be certain about the proper procedure for bringing a method-of-execution claim.  The majority's holding will also invite new litigation—if a plaintiff's attorney previously brought a method of execution claim in a § 1983 suit, will the attorney now be found to have been ineffective?  I know of no basis for this panel to take the drastic action of holding that Mr. Nance's claim should

39

have been brought in a habeas petition when no Supreme Court precedent directs

him to.

The majority arrives at its novel ruling in part by describing why this Court's

decision in Ledford, 856 F.3d 1312, has no bearing on Mr. Nance's case.  See Maj.

Op. at 13–15.  To begin, there is very little difference between Mr. Nance's case

and Mr. Ledford's case.  Ledford was based on similar facts and had the same

procedural posture now before us in Mr. Nance's case.  See id. at 13–14

(acknowledging that Mr. Nance's allegations are similar to those in Ledford).  Mr.

Ledford filed suit under § 1983, alleging "that, because he has taken gabapentin for

a decade," the dose of pentobarbital required by Georgia's lethal injection protocol

would "not render him insensate quickly enough and that he will suffer serious

pain during the execution."  Ledford, 856 F.3d at 1316.  Mr. Nance alleged the

same facts in addition to his allegations that his veins are too compromised to be

executed by lethal injection.  The Ledford court recognized that the lethal injection

protocol challenged by Mr. Ledford was required by Georgia law.  Id. at 1315 ("In

October 2001, Georgia adopted lethal injection as its method of execution." (citing

O.C.G.A. § 17-10-38(a)).  And it is worth noting that the Ledford court also

recognized that Mr. Ledford had not alleged that an alternative method of lethal

injection would substantially reduce his risk of severe pain.  Id. at 1317–18.

Rather, Mr. Ledford, like Mr. Nance, alleged that a firing squad is a feasible and

40

readily implemented method of execution in Georgia that would reduce his risk of severe pain.  Id. at 1318.

Like Mr. Nance, Mr. Ledford brought his claim under § 1983.  In contrast to Mr. Nance, Mr. Ledford suffered no ill effects for failing to bring his claim in a habeas petition.  Mr. Ledford's panel simply applied well-established precedent to hold that he was tardy in bringing his claims about the interaction of gabapentin and pentobarbital as applied to him because he "alleges that he has been taking gabapentin for approximately a decade."  Id. at 1316.  Despite the similarity of the two cases, the Ledford court did not sua sponte raise the issue the majority opinion raises and says is "squarely present[ed]" here.  Maj. Op. at 12.  Of course the Ledford panel could have, based on the same statement in Hill that was later restated in the now-touted Bucklew parenthetical.  But it did not, again because no precedent requires or even directs us to hold that method of execution claims are cognizable in habeas.  We should not deviate from the line of demarcation Ledford—and many other courts—have essentially taken for granted, and apply the Supreme Court's procedural directive to Mr. Nance's case as well.

The majority opinion itself recognizes that the facts of Mr. Nance's case are similar to those in Ledford.  See Maj. Op. at 13–14.  But it avoids explaining the different procedural approach it takes for Mr. Nance's case by turning to the Ledford panel's substantive analysis of the Eighth Amendment's alternative-

41

method requirement.  See id. at 14–15.  But this collapses the very distinction between the "substantive right under the Eighth Amendment" and the procedural vehicle of § 1983 the majority says it is making.  See id. at 14; see also id. at 12 (citing Bucklew, 139 S. Ct. at 1128).  Thus it would seem that the majority cannot disagree with my point that no precedent supports the majority's new rule that Mr. Nance must bring his method-of-execution claim in a habeas petition.

It is true that the Ledford panel, as the majority says, did not decide what is the proper vehicle for bringing a method-of-execution claim.[2]  See Maj. Op. at 15.  It had no reason to.  The proper vehicle for bringing these claims is well-established and Bucklew's clarification of the substantive requirements does not change the procedural ones.  This reflects a missing link in the majority's logic.  See id. at 14–15 (describing Ledford as an erroneous Eighth Amendment ruling "[b]ased on our misunderstanding of the alternative-method requirement under Baze and Glossip").  And the majority cannot properly ignore precedent by merely

---

[2] The majority also distinguishes Ledford by saying it did not expressly address any jurisdictional defect.  See Maj. Op. at 14.  Perhaps that is because, like here, there was no jurisdictional defect to be found.  Neither is Mr. Nance's case that finally brings any purported jurisdictional issue before us.  It resembles Ledford in all key respects but for one: the majority's sua sponte invitation to counsel to address the existence of this court-created jurisdictional issue in Mr. Nance's case.

explaining that the judges who decided <u>Ledford</u> misunderstood the alternative-method requirement under the <u>Baze-Glossip</u> test.  <u>See</u> Maj. Op. at 15.[3]

But for the majority's strained effort to justify a new category of method-of-execution claims based on an obscure parenthetical in the Supreme Court's opinion in <u>Bucklew</u>, Mr. Nance would win this appeal.

## II.

At last, I will address the merits of the appeal Mr. Nance actually filed.  The parties argue about whether Mr. Nance's method of execution claim is timely and whether he stated a claim for relief.  Assuming that at least Mr. Nance's compromised vein claim is timely,[4] we must determine whether Nance's complaint

---

[3] Taken to its logical end, the majority's holding would also bless a State's efforts to legislate away available alternatives that a litigant could point to in order to satisfy his burden under <u>Baze-Glossip</u> in a § 1983 action.  By limiting the ways an execution can be carried out under statute, any state can foreclose claims under § 1983 that this Court and the Supreme Court have historically and repeatedly treated as cognizable under § 1983.

Today the Georgia statute says only that execution must be effected by "lethal injection"; tomorrow it could mandate lethal injection by a specified three-drug cocktail, or require a particular procedure to gain intravenous access.  But of course, people sentenced to death have repeatedly brought challenges under § 1983 alleging that certain portions of a lethal injection protocol or cutdown procedure violates their Eighth Amendment rights.  <u>See, e.g.</u>, <u>Glossip</u>, 576 U.S. at 867, 135 S. Ct. at 2731 (addressing challenge to Oklahoma's switch from pentobarbital to midazolam under § 1983); <u>Nelson</u>, 541 U.S. at 645–46, 124 S. Ct. at 2123–24 (holding that the challenge to the cut-down procedure to enable the lethal injection was properly brought under § 1983).  The logical implication of the majority's ruling is that now a legislature's selection of procedures, no matter how narrow or specific, would not only deserve "deference," Maj. Op. at 20 (quotation marks omitted), but also work to prevent a challenge under § 1983.

[4] The parties agree that, for as-applied challenges, "the statute of limitations does not begin to run until the facts which would support the cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights."  <u>See</u> <u>McNair v. Allen</u>, 515 F.3d 1168, 1173 (11th Cir. 2008).  Mr. Nance says his veins are severely compromised, and that

includes "enough facts to state a claim to relief that is plausible on its face." Bell

Atl. Co. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).

Under the Baze-Glossip test, a prisoner challenging the method of his

execution must show two things: "(1) the lethal injection protocol in question

creates a substantial risk of serious harm, and (2) there are known and available

alternatives that are feasible, readily implemented, and that will in fact

significantly reduce the substantial risk of severe pain." Ledford, 856 F.3d at 1316

(quotation marks omitted) (alteration adopted); see also Bucklew, 139 S. Ct. at

1125 (citing Glossip, 576 U.S. at 868–78, 135 S. Ct. at 2732–38; Baze, 553 U.S. at

52, 128 S. Ct. at 1532). This legal framework applies to both facial and as-applied

---

"medical technicians have difficulty locating a suitable vein" when they seek to draw his blood. He also alleged that in May 2019, a medical technician told him that the GDOC execution team would have to use an alternative procedure to gain intravenous access, because they "would not otherwise be able to obtain sustained intravenous access." Then, in October 2019, after a physical examination, Mr. Nance learned there are no discernible veins in his upper or lower extremities.

From the face of Mr. Nance's complaint, he affirmatively alleged that he learned about the condition of his veins—and the impact they would have on his execution—in May 2019 at the earliest. See Siebert v. Allen, 506 F.3d 1047, 1048–49 (11th Cir. 2007) (recognizing that knowledge of underlying medical conditions, and thus "factual predicate" for claim, was "in place" upon diagnosis). Defendants acknowledge that Mr. Nance did plead he became aware of his "severely compromised and tortured veins in May 2019," but urge us to read Mr. Nance's complaint as "conveniently silent" about the cause of his compromised veins or any change in his veins. However, a statute of limitations bar is an affirmative defense, and a plaintiff is not required to negate an affirmative defense in his complaint. La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004); see also Boyd, 856 F.3d at 872 (noting that dismissal of a § 1983 method-of-execution claim is appropriate "only if it is apparent from the face of the complaint that the claim is time-barred"). Mr. Nance alleged sufficient facts to survive Defendants' timeliness challenge. See La Grasta, 358 F.3d at 848 ("[D]epending on what discovery reveals, the result at the summary judgment stage may or may not be the same.").

challenges to a State's method of execution.  See Bucklew, 139 S. Ct. at 1128–29

("(re)confirm[ing] that anyone bringing a method of execution claim . . . must meet

the Baze-Glossip test").  With these principles in mind, I turn to the elements of

Mr. Nance's claim.

## A. THE DISTRICT COURT ERRED BY MAKING FACTUAL FINDINGS ABOUT MR. NANCE'S ALLEGATIONS BASED ON HIS PLEADINGS ALONE.

The District Court made findings of fact and weighed Mr. Nance's claims

when it ruled on the Defendants' motion to dismiss under Rule 12(b)(6).  Here are

a few examples.

- "In response to Plaintiff's claim that, because the IV Team is not in the execution chamber it is 'very unlikely that they could recognize [an] extravasation and take timely, appropriate action,' this Court finds that the claim is false."  See R. Doc. 26 at 15–16 (emphasis added) (relying on protocol language that "clearly refutes Plaintiff's claim").

- "While it is possible that Plaintiff may experience pain if the IV Team unsuccessfully attempts to establish intravenous access, such pain would be de minimis as it would be no worse than that encountered when visiting a physician or donating blood."  Id. at 14 (emphasis added).

- "[T]his court first notes that Plaintiff's claim [that if cannulation is not successful the physician will resort to a cutdown procedure] is entirely speculative because it is based on Plaintiff's 'information and belief.' In fact, it is not at all clear that Georgia would use a cut-down procedure" based on the GDOC's Protocol.  Id. at 16–17 (citation omitted).

- "As far as this Court can determine, utilization of a cut-down procedure in an execution is quite rare.  This Court is aware of only one, or possibly two, cut-down procedures during an execution in the

United States." Id. at 17 & n.7 (citing Bucklew, 139 S. Ct. at 1131, and Nooner v. Norris, 594 F.3d 592, 604 (8th Cir. 2010)).

- "[T]his Court must further presume that,"—contrary to Mr. Nance's allegations—"to the degree that a physician must resort to a cutdown procedure, he will do so in a humane manner[.]" Id. at 18 (emphasis added).

It is black letter law that "[a] motion to dismiss does not test the merits of a case." See Young Apartments, Inc. v. Town of Jupiter, 529 F.3d 1027, 1037 (11th Cir. 2008). In deciding a motion to dismiss, courts must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff. Hunt v. Aimco Props., L.P., 814 F.3d 1213, 1221 (11th Cir. 2016). This rule does not permit evaluating facts or taking judicial notice of findings of fact in other cases. Cf. Grayson v. Warden, Comm'r, Ala. Dep't of Corr., 869 F.3d 1204, 1225–26 (11th Cir. 2017) (holding the issue of "[w]hether compounded pentobarbital was feasible and 'readily available' . . . was a factual issue" specific to this plaintiff's case). The District Court violated these well-established principles here, so it clearly erred in reaching its holding that Mr. Nance failed to state a claim.

An evaluation of Mr. Nance's complaint reveals that he has properly alleged the first element of a method of execution claim based on his compromised veins. To show that Georgia's lethal injection protocol "creates 'a substantial risk of serious harm,'" Ledford, 856 F.3d at 1316, Mr. Nance alleges, among other things,

that (1) inserting an intravenous catheter into his veins will be "extremely difficult and presents a substantial risk that the vein will 'blow' and lose its structural integrity, causing the injected pentobarbital to leak into the surrounding tissue"; and (2) the likely alternative to intravenous access is a "cutdown procedure." These allegations track the allegations of other plaintiffs who have survived a motion to dismiss.[5]  Mr. Nance has therefore alleged sufficient facts to show a substantial risk of harm based on his compromised veins.

## B. MR. NANCE PROPERLY ALLEGED THAT A FIRING SQUAD IS A FEASIBLE AND READILY IMPLEMENTED ALTERNATIVE.

Mr. Nance's allegations also support the second element of the Baze-Glossip test: that "there are known and available alternatives that are feasible, readily implemented, and that will in fact significantly reduce the substantial risk of severe pain."  Ledford, 856 F.3d at 1316 (quotation marks omitted).  He alleges that the State of Utah has carried out three executions by firing squad since 1976, most recently in 2010, and Utah's procedures for doing so are publicly accessible.  He

---

[5] For example, in Bucklew, the Supreme Court noted that the plaintiff asserted, among other things, that the state's injection protocol "could cause the vein to rupture" and the IV Team might use a painful cut-down procedure. 139 S. Ct. at 1130.  The Supreme Court did not say these risks could not qualify as substantial risk of severe pain as a matter of law; rather, the Court rejected these asserted risks because they "rest[ed] on speculation unsupported" at the summary judgment stage. Id.  The Supreme Court made a similar determination in Baze.  The Baze plaintiffs claimed that "it is possible that the IV catheters will infiltrate into surrounding tissue, causing an inadequate dose to be delivered to the vein." 553 U.S. at 54, 128 S. Ct. at 1533.  The Supreme Court rejected that risk because the evidence—following "extensive hearings and . . . detailed findings of fact" by the trial court—showed that Kentucky trained its personnel to calculate and mix an adequate dose. Id. at 41, 128 S. Ct. at 1526.

alleges execution by firing squad is "a known and available alternative method" recognized as permissible by the Supreme Court.  Mr. Nance says Georgia has a "sufficient stockpile or can readily obtain both the weapons and ammunition necessary" to carry out such an execution.  And he alleges a firing squad will result in a "swift and virtually painless" execution.  These allegations are sufficient to allege that Georgia is "able to implement and carry out" execution by firing squad "relatively easily and reasonably quickly."  See Boyd, 856 F.3d at 868. Defendants argue Mr. Nance has done nothing more than "recite[] the formulaic elements" of this prong, but they place too heavy a burden on Nance at the pleadings stage.  See Bucklew, 139 S. Ct. at 1128–29 (recognizing there is "little likelihood that an inmate facing a serious risk of pain will be unable to identify an available alternative").  Mr. Nance has indeed pointed to "well-established protocol in another State" and alleged that Georgia has the means to carry out this method of execution.  See id. at 1128.

This Court has recognized the viability of execution by firing squad.  See Ledford, 856 F.3d at 1318 (explaining that the firing squad method has "given way to more humane methods of execution" (quotation marks omitted and alteration adopted)); Boyd, 856 F.3d at 881 (Wilson, J., concurring in judgment) ("[W]e know that the firing squad is a straightforward, well-known procedure that has been performed for centuries.").  So has the Supreme Court.  See Bucklew, 139 S.

48

Ct. at 1123 (citing <u>Wilkerson v. Utah</u>, 99 U.S. 130 (1879)).  There appear to be two Supreme Court Justices who have recognized that a firing squad may be "significantly more reliable than other methods, including lethal injection," and "there is some reason to think that [death by firing squad] is relatively quick and painless."  <u>Glossip</u>, 576 U.S. at 976–77, 135 S. Ct. at 2796 (Sotomayor, J., dissenting); <u>see also</u> <u>Arthur v. Dunn</u>, 137 S. Ct. 725, 733–34 (2017) (mem.) (Sotomayor, J., dissenting from the denial of certiorari); <u>Bucklew</u>, 139 S. Ct. at 1136 (Kavanaugh, J., concurring) (citing Justice Sotomayor's dissent in <u>Arthur</u> and explaining the State conceded a firing squad is an available alternative, if adequately pled).

In sum, Mr. Nance has stated a sufficient claim and the District Court erred in holding he did not.

*       *       *

I can think of no more consequential act of a government than to take the life of one of its citizens.  Mr. Nance is facing that fate in Georgia.  The role of federal courts in the process of the taking of Mr. Nance's life is limited.  Our job in Mr. Nance's case was merely to apply straightforward and well-established rules to determine whether, as Mr. Nance claims, the District Court erred by making findings of fact and weighing allegations in ruling on the State's motion to dismiss.  The majority opinion fails to undertake this job.  More worrisome, the majority's

49

decision to change the rules governing the procedure by which death row prisoners must bring a method of execution claim introduces chaos into this area of the law. People facing their death at the hands of the State deserve more reliable treatment from their federal courts.  I dissent.