(Slip Opinion)                OCTOBER TERM, 2021                1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.*, 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## NANCE *v.* WARD, COMMISSIONER, GEORGIA DEPARTMENT OF CORRECTIONS, ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

No. 21–439.  Argued April 25, 2022—Decided June 23, 2022

A prisoner who challenges a State's proposed method of execution under the Eighth Amendment must identify a readily available alternative method that would significantly reduce the risk of severe pain. If the prisoner proposes a method already authorized under state law, the Court has held that his claim can go forward under 42 U. S. C. §1983, rather than in habeas. See *Nelson* v. *Campbell*, 541 U. S. 637, 644–647. But the prisoner is not confined to proposing a method already authorized under state law; he may ask for a method used in other States. See *Bucklew* v. *Precythe*, 587 U. S. ___, ___. The question presented is whether a prisoner who does so may still proceed under §1983.

Petitioner Michael Nance brought suit under §1983 to enjoin Georgia from using lethal injection to carry out his execution. Lethal injection is the only method of execution that Georgia law now authorizes. Nance alleges that applying that method to him would create a substantial risk of severe pain. As an alternative to lethal injection, Nance proposes death by firing squad—a method currently approved by four other States. The District Court dismissed Nance's §1983 suit as untimely. The Eleventh Circuit rejected it for a different reason: that Nance should have advanced his method-of-execution claim by way of a habeas petition rather than a §1983 suit. A habeas petition, that court stated, is appropriate when a prisoner seeks to invalidate his death sentence. And the Eleventh Circuit thought that was what Nance was doing. It asserted that Georgia law—which again, only authorizes execution by lethal injection—had to be taken as "fixed." 981 F. 3d 1201, 1211. Under that "fixed" law, the court said, enjoining Georgia from executing Nance by lethal injection would mean that he

Syllabus

could not be executed at all. The court therefore "reconstrued" Nance's §1983 complaint as a habeas petition. *Id.*, at 1203. Having done so, the court then dismissed Nance's petition as "second or successive," because he had previously sought federal habeas relief. 28 U. S. C. §2244(b).

*Held*: Section 1983 remains an appropriate vehicle for a prisoner's method-of-execution claim where, as here, the prisoner proposes an alternative method not authorized by the State's death-penalty statute.

Both §1983 and the federal habeas statute enable a prisoner to complain of "unconstitutional treatment at the hands of state officials." *Heck* v. *Humphrey*, 512 U. S. 477, 480. A prisoner may generally sue under §1983, unless his claim falls into that statute's "implicit exception" for actions that lie "within the core of habeas corpus." *Wilkinson* v. *Dotson*, 544 U. S. 74, 79. When a prisoner seeks relief that would "necessarily imply the invalidity of his conviction or sentence," he comes within the core and must proceed in habeas. *Heck*, 512 U. S., at 487.

The Court has twice held that prisoners could bring method-of-execution claims under §1983. See *Nelson*, 541 U. S., at 644–647; *Hill* v. *McDonough*, 547 U. S. 573, 580–583. Although these cases predated the Court's requirement that prisoners identify alternative methods of execution, each prisoner had still said enough to leave the Court convinced that alternatives to the challenged procedures were available. See *Nelson*, 541 U. S., at 646; *Hill*, 547 U. S., at 580–581. Because alternatives were available, the prisoners' challenges would not "*necessarily* prevent [the State] from carrying out [their] execution[s]." *Nelson*, 541 U. S., at 647 (emphasis in original); see *Hill*, 547 U. S., at 583. That made §1983 a proper vehicle.

In *Nelson* and *Hill*, the Court observed that using a different method required only a change in an agency's uncodified protocol. Here, Georgia would have to change its statute to carry out Nance's execution by firing squad. Except for that fact, this case would even more clearly than *Nelson* and *Hill* be fit for §1983. Since those cases, the Court has required a prisoner bringing a method-of-execution claim to propose an alternative way of carrying out his death sentence. Thus, an order granting the prisoner relief does not, as required for habeas, "*necessarily* prevent" the State from implementing the execution. *Nelson*, 541 U. S., at 647 (emphasis in original). Rather, the order gives the State a pathway forward.

That remains true even where, as here, the proposed alternative is one unauthorized by present state law. Nance's requested relief still places his execution in Georgia's control. If Georgia wants to carry out the death sentence, it can enact legislation approving what a court has found to be a fairly easy-to-employ method of execution. Although that

Cite as: 597 U. S. ____ (2022)                    3

Syllabus

may take more time and effort than changing an agency protocol, *Hill* explained that the "incidental delay" involved in changing a procedure is irrelevant to the vehicle question—which focuses on whether the requested relief would "necessarily" invalidate the death sentence. 547 U. S., at 583. And anyway, Georgia has given no reason to think that passing new legislation would be a substantial impediment.

The Court of Appeals could reach the contrary conclusion only by wrongly treating Georgia's statute as immutable. In its view, granting Nance relief would necessarily imply the invalidity of his death sentence because Georgia law must be taken as "fixed." 981 F. 3d, at 1211. But one of the "main aims" of §1983 is to "override"—and thus compel change of—state laws when necessary to vindicate federal constitutional rights. *Monroe* v. *Pape*, 365 U. S. 167, 173. Indeed, courts not uncommonly entertain prisoner suits under §1983 that may, if successful, require changing state law.

Under the contrary approach, the federal vehicle for bringing a federal method-of-execution claim would depend on the vagaries of state law. Consider how Nance's claim would fare in different States. In Georgia (and any other State with lethal injection as the sole authorized method), he would have to bring his claim in a habeas petition. But in States authorizing other methods when a court holds injection unlawful, he could file a §1983 suit. It would be strange to read state-by-state discrepancies into the Court's understanding of how §1983 and the habeas statute apply to federal constitutional claims. That is especially so because the use of the vehicles can lead to different outcomes: An inmate in one State could end up getting his requested relief, while an inmate in another might have his case thrown out.

The approach of the Court of Appeals raises one last problem: It threatens to undo the commitment this Court made in *Bucklew*. The Court there told prisoners they could identify an alternative method not "presently authorized" by the executing State's law. 587 U. S., at ___. But under the approach of the Court of Appeals, a prisoner who presents an out-of-state alternative is relegated to habeas—and once there, he will almost inevitably collide with the second-or-successive bar. That result, precluding claims like Nance's, would turn *Bucklew* into a sham.

Finally, recognizing that §1983 is a good vehicle for a claim like Nance's does not countenance "last-minute" claims to forestall an execution. *Id.*, at ___. Courts must consider delay in deciding whether to grant a stay of execution, and outside the stay context, courts have tools to streamline §1983 actions and protect a sentence's timely enforcement. Pp. 5–13.

981 F. 3d 1201, reversed and remanded.

KAGAN, J., delivered the opinion of the Court, in which ROBERTS, C. J., and BREYER, SOTOMAYOR, and KAVANAUGH, JJ., joined. BARRETT, J., filed a dissenting opinion, in which THOMAS, ALITO, and GORSUCH, JJ., joined.

Cite as: 597 U. S. ____ (2022)     1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 21–439

_____

## MICHAEL NANCE, PETITIONER *v.* TIMOTHY C. WARD, COMMISSIONER, GEORGIA DEPART-MENT OF CORRECTIONS, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[June 23, 2022]

JUSTICE KAGAN delivered the opinion of the Court.

In several recent decisions, this Court has set out rules for challenging a State's proposed method of execution under the Eighth Amendment. To prevail on such a claim, a prisoner must identify a readily available alternative method of execution that would significantly reduce the risk of severe pain. In doing so, the prisoner is not confined to proposing a method authorized by the executing State's law; he may instead ask for a method used in other States. See *Bucklew* v. *Precythe*, 587 U. S. ___, ___ (2019) (slip op., at 19).

This case concerns the procedural vehicle appropriate for a prisoner's method-of-execution claim. We have held that such a claim can go forward under 42 U. S. C. §1983, rather than in habeas, when the alternative method proposed is already authorized under state law. See *Nelson* v. *Campbell*, 541 U. S. 637, 644–647 (2004). Here, the prisoner has identified an alternative method that is not so authorized. The question presented is whether §1983 is still a proper vehicle. We hold that it is.

Opinion of the Court

# I

## A

States choosing to impose capital punishment have over time sought out "more humane way[s] to carry out death sentences." *Glossip* v. *Gross*, 576 U. S. 863, 868 (2015). In the 27 States with the death penalty, lethal injection is by far the most common method of execution. See *ibid.* Fifteen States, including Georgia, authorize only the use of lethal injection.[1] Nine States authorize lethal injection plus one or more other specified methods; of those (to use an example relevant here), four approve the firing squad.[2] And three States provide that if their authorized methods (including lethal injection) are found unconstitutional, then they may carry out a death sentence by any constitutional means.[3]

A death row inmate may attempt to show that a State's planned method of execution, either on its face or as applied to him, violates the Eighth Amendment's prohibition on

_____

[1] Ariz. Rev. Stat. Ann. §13–757(A) (2020); Ga. Code Ann. §17–10–38(a) (2020); Idaho Code Ann. §19–2716 (2017); Ind. Code §35–38–6–1(a) (2021); Kan. Stat. Ann. §22–4001(a) (2007); La. Rev. Stat. Ann. §15:569(B) (West 2022); Mont. Code Ann. §46–19–103(3) (2021); Neb. Rev. Stat. §83–964 (2020 Cum. Supp.); Nev. Rev. Stat. §176.355(1) (2017); N. C. Gen. Stat. Ann. §15–188 (2021); Ohio Rev. Code Ann. §2949.22(A) (Lexis 2021); Ore. Rev. Stat. §137.473(1) (2021); 61 Pa. Cons. Stat. §4304(a) (2015 Special Edition); S. D. Codified Laws §23A–27A–32 (2016); Tex. Code Crim. Proc. Ann., Art. §43.14(a) (Vernon 2018).

[2] Mississippi, Oklahoma, South Carolina, and Utah authorize the firing squad among other methods of execution. H. B. 1479, 2022 Leg., Reg. Sess. (Miss.); Okla. Stat., Tit. 22, §1014 (2020 Supp.); S. C. Code Ann. §24–3–530 (2021 Cum. Supp.); Utah Code §77–18–113 (2021). The rest of the States in this bucket most commonly authorize electrocution or lethal gas. See Ark. Code Ann. §§5–4–617(a), (l) (Supp. 2021); Cal. Penal Code Ann. §3604(a) (West Supp. 2022); Ky. Rev. Stat. Ann. §§431.220(1)(a), 431.223 (Lexis 2021); Mo. Rev. Stat. §546.720(1) (2016); Wyo. Stat. Ann. §7–13–904 (2021).

[3] Ala. Code §15–18–82.1(c) (2018); Fla. Stat. §922.105(3) (2018); Tenn. Code Ann. §40–23–114(d) (2018).

Opinion of the Court

"cruel and unusual" punishment.  To succeed on that claim, the Court held in *Glossip*, he must satisfy two requirements.  First, he must establish that the State's method of execution presents a "substantial risk of serious harm"—severe pain over and above death itself.  *Id.*, at 877.  Second, and more relevant here, he "must identify an alternative [method] that is feasible, readily implemented, and in fact significantly reduce[s]" the risk of harm involved.  *Ibid.* (internal quotation marks omitted).  Only through a "comparative exercise," we have explained, can a judge "decide whether the State has cruelly 'superadded' pain to the punishment of death."  *Bucklew*, 587 U. S., at ___ (slip op., at 15).

In identifying an alternative method, the Court in *Bucklew* held, an inmate is "not limited to choosing among those presently authorized by a particular State's law."  *Id.*, at ___ (slip op., at 19).  The prisoner may, for example, "point to a well-established protocol in another State as a potentially viable option."  *Ibid.*  The Eighth Amendment, *Bucklew* explained, "is the supreme law of the land, and the comparative assessment it requires can't be controlled by the State's choice of which methods to authorize."  *Id.*, at ___ (slip op., at 20); see *Arthur* v. *Dunn*, 580 U. S. ___, ___ (2017) (slip op., at 10) (SOTOMAYOR, J., dissenting from denial of certiorari).  In addition, *Bucklew* stated, allowing an inmate to propose a method not authorized by the State keeps his "burden" within reasonable bounds.  587 U. S., at ___ (slip op., at 19).  Because the inmate can look beyond the State's current law, we saw "little likelihood" that he would "be unable to identify an available alternative."  *Id.*, at ___ (slip op., at 20); see *id.*, at ___ (slip op., at 2) (KAVANAUGH, J., concurring).

## B

While trying to flee a bank robbery, petitioner Michael

Opinion of the Court

Nance shot and killed a bystander.  A Georgia jury convicted Nance of murder, and the trial court sentenced him to death.  Nance challenged his conviction and sentence—first on direct appeal, next in state collateral proceedings, and finally in federal habeas—but without success.

Nance later brought suit under §1983 to enjoin Georgia from using lethal injection to carry out his death sentence. As stated above, lethal injection is the only method of execution Georgia law now authorizes. See *supra*, at 2.[4]  In his complaint, Nance alleges that applying that method to him would create a substantial risk of severe pain.  See App. to Pet. for Cert. 86a.  According to Nance, his veins are "severely compromised and unsuitable for sustained intravenous access." *Ibid.*  They are, Nance says, likely to "blow" during the execution, "leading to the leakage of the lethal injection drug into the surrounding tissue" and thereby causing "intense pain and burning." *Ibid.*  On top of that, Nance asserts, his longtime use of a prescription drug for back pain creates a risk that the sedative used in the State's lethal injection protocol will fail to "render him unconscious and insensate." *Ibid.*  Nance proposes, as a "readily available alternative" method of execution, "death by firing squad." *Ibid.*  As noted earlier, four other States have approved that method.  See *supra*, at 2, and n. 2.  Use of a firing squad, Nance says, will lead to "swift and virtually painless" death.  App. to Pet. for Cert. 102a.  And implementing that method, he says, would be simple: Georgia has enough qualified personnel and could borrow specific protocols from another State. *Ibid.*

After the District Court dismissed Nance's suit as untimely, the Court of Appeals for the Eleventh Circuit rejected it for a different reason—that Nance had used the

_____

[4] See Ga. Code Ann. §17–10–38(a) ("All persons who have been convicted of a capital offense and have had imposed upon them a sentence of death shall suffer such punishment by lethal injection").

wrong procedural vehicle. In the panel majority's view, Nance should have brought his method-of-execution claim by way of a habeas petition rather than a §1983 suit. A habeas petition, the court stated, is appropriate when a prisoner seeks to "invalidate" a death sentence. 981 F. 3d 1201, 1209 (2020). And the court thought that was what Nance was doing: The injunction he requested, preventing the use of lethal injection, "necessarily impl[ies] the invalidity of his death sentence." *Id.*, at 1203. That was so, the court reasoned, because Georgia law "must [be taken] as fixed"—and under that "fixed" law, if Nance could not be executed by lethal injection, then he could not be executed at all. *Id.*, at 1211. The court therefore "reconstrued" Nance's complaint as a habeas petition. *Id.*, at 1203. And having done so, the court dismissed the petition as "second or successive" because Nance had already sought federal habeas relief. 28 U. S. C. §2244(b); see *supra*, at 4. Judge Martin dissented, arguing that Nance could proceed under §1983. In her view, Nance was not challenging his death sentence; all he wanted was an order telling "the State to execute him by a different method." 981 F. 3d, at 1215. The Eleventh Circuit denied Nance's petition for rehearing en banc over the dissent of three judges. See 994 F. 3d 1335 (2021).

We granted certiorari, 595 U. S. ___ (2022), and now reverse.

II

This Court has often considered, when evaluating state prisoners' constitutional claims, the dividing line between §1983 and the federal habeas statute. Each law enables a prisoner to complain of "unconstitutional treatment at the hands of state officials." *Heck* v. *Humphrey*, 512 U. S. 477, 480 (1994). But there the resemblance stops. The habeas statute contains procedural requirements (like the second-

Opinion of the Court

or-successive rule) nowhere found in §1983; the former stat-
ute may therefore require dismissal of a claim when the lat-
ter statute would not.  See *id.*, at 480–481.  Still more per-
tinent here, the scope of the two laws also differs.  Section
1983 broadly authorizes suit against state officials for the
"deprivation of any rights" secured by the Constitution.
Read literally, that language would apply to all of a pris-
oner's constitutional claims, thus swamping the habeas
statute's coverage of claims that the prisoner is "in custody
in violation of the Constitution."  28 U. S. C. §2254(a); see
*Wilkinson* v. *Dotson*, 544 U. S. 74, 78–79 (2005).  So we have
not read §1983 literally in the prisoner context.  To the con-
trary, we have insisted that §1983 contains an "implicit ex-
ception" for actions that lie "within the core of habeas cor-
pus."  *Id.*, at 79.

In defining that core, this Court has focused on whether
a claim challenges the validity of a conviction or sentence.
See *Preiser* v. *Rodriguez*, 411 U. S. 475, 489 (1973).  The
simplest cases arise when an inmate, alleging a flaw in his
conviction or sentence, seeks "immediate or speedier re-
lease" from prison.  *Heck*, 512 U. S., at 481.  The analogue
in the capital punishment context, also clear-cut, is when
an inmate seeks to overturn his death sentence, thus pre-
venting the State from executing him.  Slightly less obvious,
this Court has held that an inmate must proceed in habeas
when the relief he seeks would "necessarily imply the inva-
lidity of his conviction or sentence."  *Id.*, at 487 (barring
§1983 suits for money damages when prevailing would im-
ply a conviction was wrongful).  In doing so, though, we
have underscored that the implication must be "*neces-
sar[y].*"  *Wilkinson,* 544 U. S., at 81 (emphasis in original);
see *Nelson*, 541 U. S., at 647.  On the opposite end of the
spectrum, the Court has held that a prison-conditions claim
may be brought as a §1983 suit.  See *Preiser*, 411 U. S., at
498–499.  Such a suit—for example, challenging the ade-
quacy of a prison's medical care—does not go to the validity

Opinion of the Court

of a conviction or sentence, and thus falls outside habeas's core.

In *Nelson* v. *Campbell* and *Hill* v. *McDonough*, this Court held two method-of-execution claims to fall on the §1983 side of the divide. See *Nelson*, 541 U. S., at 644–647; *Hill*, 547 U. S. 573, 580–583 (2006). Both cases involved challenges to a State's lethal injection protocol—the first to the use of a "cut-down" procedure to access the prisoner's veins, the second to a particular three-drug sequence. The cases predated our requirement that prisoners identify alternative methods, but each prisoner had said enough to leave the Court convinced that alternatives to the challenged procedures were available. See *Nelson*, 541 U. S., at 646; *Hill*, 547 U. S., at 580–581. And that made the difference in both cases. A claim should go to habeas, the Court held, only if granting the prisoner relief "would *necessarily* prevent [the State] from carrying out its execution." *Nelson*, 541 U. S., at 647 (emphasis in original); see *Hill*, 547 U. S., at 583.[5] In neither case would it have done so. Each prisoner had asked only for a change in implementing the death penalty, and an order granting that relief would not prevent the State from executing him. So the claims could proceed under §1983.

Both *Nelson* and *Hill*, though, reserved the question at issue here: whether the result should be different when a State's death-penalty statute does not authorize the alternative method of execution. See *Nelson*, 541 U. S., at 645; *Hill*, 547 U. S., at 580. In each case, the Court observed that using a different method required no change in the State's statute, but only a change in an agency's uncodified

_____

[5] In both cases, the Court made clear that its formulation (again, would granting relief necessarily prevent the execution) merely adapted to the capital punishment context the question the Court had formerly asked in choosing between §1983 and habeas: Would granting relief necessarily imply the invalidity of a conviction or sentence? See *Nelson*, 541 U. S., at 646; *Hill*, 547 U. S., at 583; *supra*, at 6.

protocols.  Here, all parties agree that Georgia would have
to change its statute to carry out Nance's execution by
means of a firing squad.  They dispute whether that fact
switches Nance's claim to the habeas track.

Except for the Georgia statute, this case would even more
clearly than *Nelson* and *Hill* be fit for §1983.  Since those
two cases, we have compelled a prisoner bringing a method-
of-execution claim to propose an alternative way for the
State to carry out his death sentence.  He must, we have
said, present a "proposal" that is "sufficiently detailed" to
show that an alternative method is both "feasible" and
"readily implemented." *Bucklew*, 587 U. S*.,* at ___ (slip op.,
at 21); see *supra*, at 3.  In other words, he must make the
case that the State really can put him to death, though in a
different way than it plans.  The substance of the claim, now
more than ever, thus points toward §1983.  The prisoner is
not challenging the death sentence itself; he is taking the
validity of that sentence as a given.  And he is providing the
State with a veritable blueprint for carrying the death sen-
tence out.  If the inmate obtains his requested relief, it is
because he has persuaded a court that the State could read-
ily use his proposal to execute him.  The court's order there-
fore does not, as required for habeas, "*necessarily* prevent"
the State from carrying out its execution.  *Nelson*, 541 U. S.,
at 647 (emphasis in original).  Rather, the order gives the
State a pathway forward.

That remains true, we hold today, even if the alternative
route necessitates a change in state law.  Nance's requested
relief still places his execution in Georgia's control.  Assum-
ing it wants to carry out the death sentence, the State can
enact legislation approving what a court has found to be a
fairly easy-to-employ method of execution.  To be sure,
amending a statute may require some more time and effort
than changing an agency protocol, of the sort involved in
*Nelson* and *Hill*.  But in *Hill*, we explained that the "inci-
dental delay" involved in changing a procedure—which

even when uncodified may take some real work[6]—is not relevant to the vehicle question. 547 U. S., at 583. Instead, that inquiry (as described earlier) focuses on whether the requested relief would "necessarily" invalidate, or foreclose the State from implementing, the death sentence. *Ibid.*; see *supra*, at 6. And anyway, Georgia has given us no reason to think that the amendment process would be a substantial impediment. The State has legislated changes to its execution method several times before. See Dept. of Corrections, Office of Planning and Analysis, A History of the Death Penalty in Georgia: Executions by Year 1924–2014 (Jan. 2015) (describing how Georgia moved from hanging to electrocution to lethal injection). Other States have regularly done the same, often in an effort to make executions more humane. See S. Banner, The Death Penalty: An American History 296–297 (2002); see *supra*, at 2. That Nance's claim would require such action does not turn it from one contesting a method of execution into one disputing the underlying death sentence.

The Court of Appeals could reach the contrary conclusion only by wrongly treating Georgia's statute as immutable. Recall the court's reasoning: Granting Nance relief would "necessarily imply[] the invalidity" of his death sentence because Georgia law (presumably both statutes and regulations) "must [be taken] as fixed." 981 F. 3d, at 1210–1211; see *supra*, at 5; *post*, at 3–4 (BARRETT, J., dissenting) (agreeing that we must "take state law as we find it"). But why must it be so taken—when as a matter of fact Georgia could change its law and execute Nance? And when Nance accepts the validity of the State's taking that course? The Court of Appeals posited that "it is not [a federal court's] place to entertain complaints under section 1983" that

───────
[6]In a recent case, Texas described to this Court the complexity of changing uncodified execution protocols, given the number of state actors who need to reach agreement. See Respondents' Rule 32.3 Material in *Ramirez* v. *Collier*, O. T. 2021, No. 21–5592, p. 14a.

Opinion of the Court

would compel a State to change its capital punishment law.
981 F. 3d, at 1211; see *post*, at 3.  Except that sometimes it
is.  One of the "main aims" of §1983 is to "override"—and
thus compel change of—state laws when necessary to vin-
dicate federal constitutional rights.  *Monroe* v. *Pape*, 365
U. S. 167, 173 (1961); see *Zinermon* v. *Burch*, 494 U. S. 113,
124 (1990).  Or said otherwise, the ordinary and expected
outcome of many a meritorious §1983 suit is to declare un-
enforceable (whether on its face or as applied) a state stat-
ute as currently written.  See, *e.g.*, *Cedar Point Nursery* v.
*Hassid*, 594 U. S. ___ (2021).  And in turn, the unsurprising
effect of such a judgment may be to send state legislators
back to the drawing board.  See, *e.g.*, *Kolender* v. *Lawson*,
461 U. S. 352, 358 (1983).  A prisoner, no less than any
other §1983 litigant, can bring a suit of that ilk—can seek
relief that would preclude a State from achieving some re-
sult unless and until it amends a statute.

   And indeed, courts not uncommonly entertain prisoner
suits under §1983 that may, if successful, require changing
state law.  As noted earlier, the classic prisoner §1983 suit
is one challenging prison conditions—say, overcrowding or
inadequate medical care.  See *supra*, at 6–7.  Those suits
can be brought under §1983 because—just like this one—
they attack not the validity of a conviction or sentence, but
only a way of implementing the sentence.  (They concern, in
other words, how the prescribed incarceration is being car-
ried out.)  And the suits do not get diverted into habeas if,
as sometimes is true, a judgment for the inmate would re-
quire a new statutory appropriation for the prison—to hire
more doctors, for example.  See, *e.g.*, *Stafford* v. *Carter*, No.
1:17–cv–00289 (SD Ind.), ECF Docs. 268, 282.  Similarly, no
one would think an action of that kind should go to habeas
if the prison policy challenged (say, each facility's maximum
population) were specified in a statute or regulation.  Or
consider another kind of prisoner §1983 suit this Court has
recently considered—one by a death row inmate seeking to

Opinion of the Court

compel the State to open the execution chamber to his spiritual advisor.  See *Dunn* v. *Ray*, 586 U. S. ___ (2019); *Murphy* v. *Collier*, 587 U. S. ___ (2019); *Gutierrez* v. *Saenz*, 592 U. S. ___ (2021); *Ramirez* v. *Collier*, 595 U. S. ___ (2022). Here too, the claim belongs in §1983 because—just like this one—it challenges not the validity of a death sentence, but only the State's mode of carrying it out.  And again, we cannot think it would matter if a State codified its no-spiritual-advisor protocol in a regulation.  The State, assuming it lost the suit, would then have to modify its law to go forward with the execution.  But the nature of the suit would still be the same.  The complaint would still ask to adjust only a matter of implementation, so it still could be filed under §1983.

Under the contrary approach, the federal vehicle for bringing a federal claim—and with that, the viability of the claim—would depend on the vagaries of state law.  Consider how Nance's own method-of-execution claim would fare in different States.  In Georgia (and any other State with lethal injection as the sole authorized method), he would have to bring his claim in a habeas petition.  But in some other States primarily using lethal injection, he could file a §1983 suit—because their statutes include back-up plans for when a court holds injection unconstitutional.  See *supra*, at 2. Oklahoma's statute, for example, provides in that event for several alternative methods, including a firing squad.  See Okla. Stat., Tit. 22, §§1014(B)–(D).  And Alabama's statute, in addition to listing alternatives, provides for execution "by any constitutional method."  Ala. Code §15–18–82.1(c). Similar issues of non-uniformity could arise when inmates challenge, as in *Nelson* and *Hill*, specific ways of carrying out a lethal injection.  See *supra*, at 7.  That is because some States have codified injection protocols in their statutes or regulations, while others (like Georgia) have not.  Compare, *e.g.*, Ark. Code Ann. §§5–4–617(c)–(f) with, *e.g.*, Ga. Code Ann. §17–10–38(a).  It would be strange to read such state-

Opinion of the Court

by-state discrepancies into our understanding of how §1983 and the habeas statute apply to federal constitutional claims. And that is especially so because the use of those vehicles can lead to different outcomes: An inmate in one State could end up getting his requested relief, while a similarly situated inmate in another would have his suit thrown out. We cannot agree with the dissent that such a disparity would be "unremarkable." *Post*, at 3. Its acceptance would mean that the Eighth Amendment is enforceable in federal court in one State, but not in another. Again, this case tells the tale: Having reconstrued Nance's complaint as a habeas petition, the court below dismissed it as second or successive—a bar existing in habeas alone. See *supra*, at 5–6.

That part of the circuit court's opinion raises one last problem, because it threatens to undo the commitment this Court made in *Bucklew*. See *post*, at 4 (acknowledging the point, though finding it irrelevant). Recall that the Court there told inmates they could identify an alternative method of execution not "presently authorized" by the executing State's law. 587 U. S., at ___ (slip op., at 19); see *supra*, at 3. That option would ensure state law does not "control[]" the Eighth Amendment inquiry; and it would keep manageable the inmate's "burden" to identify an alternative. 587 U. S., at ___–___ (slip op., at 19–20). Under the circuit court's approach, however, that option is no option at all. Once an inmate presents an out-of-state alternative, he is relegated to habeas. And once he is in habeas, he will (according to the circuit court) almost inevitably collide with the second-or-successive bar (because a method-of-execution claim typically postdates a first habeas petition by many years). We do not here decide whether that view of the second-or-successive bar is correct. But the two aspects of the circuit court's ruling, when taken together, turn *Bucklew* into a sham. On the Eleventh Circuit's view, Geor-

Opinion of the Court

gia law effectively prevents an inmate like Nance from putting forward an out-of-state alternative. And Georgia law thereby precludes the kind of method-of-execution claim this Court told prisoners they could bring.

One last point from *Bucklew*—this one about "dilatory" tactics—bears repeating here. *Id.*, at ___ (slip op., at 30). In recognizing that §1983 is a good vehicle for a claim like Nance's, we do not for a moment countenance "last-minute" claims relied on to forestall an execution. *Ibid.* "Courts should police carefully against attempts to use [method-of-execution] challenges as tools to interpose unjustified delay." *Ibid.* In deciding whether to grant a stay of execution, courts must consider whether such a challenge "could have been brought earlier" or otherwise reflects a prisoner's "attempt at manipulation." *Ibid.* (internal quotation marks omitted). And outside the stay context, courts have a variety of tools—including the "substantive [and] procedural limitations" that the Prison Litigation Reform Act imposes—to streamline §1983 actions and protect "the timely enforcement of a sentence." *Nelson*, 541 U. S., at 650 (listing PLRA limitations); *Bucklew*, 587 U. S., at ___ (slip op., at 29). Finally, all §1983 suits must be brought within a State's statute of limitations for personal-injury actions. See *Wallace* v. *Kato*, 549 U. S. 384, 387 (2007). Here, the District Court held Nance's suit untimely under that limitations period. See No. 20–cv–00107 (ND Ga., Mar. 13, 2020), ECF Doc. 26, p. 12; *supra,* at 4. The Eleventh Circuit did not review that holding because it instead reconstrued the action as a habeas petition. Now that we have held that reconstruction unjustified, the court on remand can address the timeliness question, as well as any others that remain.

\*     \*     \*

For the reasons stated, we reverse the judgment of the Court of Appeals for the Eleventh Circuit and remand the case for further proceedings consistent with this opinion.

14                          NANCE *v.* WARD

Opinion of the Court

*It is so ordered.*

BARRETT, J., dissenting

# SUPREME COURT OF THE UNITED STATES

_____

No. 21–439

_____

## MICHAEL NANCE, PETITIONER *v.* TIMOTHY C. WARD, COMMISSIONER, GEORGIA DEPART- MENT OF CORRECTIONS, ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

[June 23, 2022]

JUSTICE BARRETT, with whom JUSTICE THOMAS, JUSTICE ALITO, and JUSTICE GORSUCH join, dissenting.

An inmate must bring a method-of-execution challenge in a federal habeas application, rather than under 42 U. S. C. §1983, if "a grant of relief to the inmate would necessarily bar the execution." *Hill* v. *McDonough*, 547 U. S. 573, 583 (2006). Under this criterion, Michael Nance must proceed in habeas because a judgment in his favor would "neces-sarily bar" the State from executing him. *Ibid.* Nance asked the District Court to "enjoin the Defendants from pro-ceeding with [his] execution . . . by a lethal injection," claim-ing that the use of such method would violate the Eighth Amendment as applied to him. App. to Pet. for Cert. 103a–104a. But lethal injection is the only method of execution authorized under Georgia law. See Ga. Code Ann. §17–10–38(a) (2020). Thus, if Nance is successful, the defendants in this case—the commissioner of the Georgia Department of Corrections and the warden—will be powerless to carry out his sentence. That makes habeas the right vehicle for Nance's Eighth Amendment challenge.

The Court sees things differently. True, Nance is arguing that the Eighth Amendment renders his sentence invalid under current Georgia law. But the Court points out that

BARRETT, J., dissenting

the law could change: The legislature could authorize execution by firing squad, the alternative method that Nance has proposed. In fact, the Court says that Nance's proposal offers Georgia a "veritable blueprint for carrying the death sentence out." *Ante*, at 8. So an order in Nance's favor would not "necessarily bar" the State from ever executing Nance, in the Court's view. Instead, the order would "giv[e] the State a pathway forward" if the legislature chooses to pursue the amendment process. *Ibid.*

The Court is looking too far down the road. In my view, the consequence of the relief that a prisoner seeks depends on state law *as it currently exists*. And under existing state law, there is no question that Nance's challenge necessarily implies the invalidity of his lethal injection sentence: He seeks to prevent the State from executing him in the only way it lawfully can.

In this respect, Nance's method-of-execution challenge differs from those brought in *Nelson* v. *Campbell*, 541 U. S. 637 (2004), and *Hill*, 547 U. S. 573. In *Nelson*, the inmate challenged the use of a "cut-down" procedure to access his veins. 541 U. S., at 640–642. We held that the suit sounded in §1983 because it would not "*necessarily* prevent Alabama from carrying out its execution." *Id.,* at 647. We reasoned that, though venous access was an indispensable prerequisite to lethal injection, "a particular means of gaining such access" was not. *Id.,* at 645. Notably, "[n]o Alabama statute require[d] use of the cut-down," and the State did not put forward any "duly-promulgated regulations to the contrary." *Id.,* at 646. So even a successful challenge on these grounds "would have allowed the State to proceed with the execution as scheduled." *Ibid.*

The same was true in *Hill*, which involved an inmate's challenge to Florida's three-drug protocol. 547 U. S., at 578. We held that the inmate could proceed under §1983 because his "action if successful would not necessarily prevent the State from executing him by lethal injection." *Id.,* at 580.

Barrett, J., dissenting

We emphasized that the complaint did "not challenge the lethal injection sentence as a general matter" but instead only "the anticipated protocol." *Ibid.* As in *Nelson*, we stressed that Florida law did "not require the department of corrections to use the challenged procedure." 547 U. S., at 580. The State was "free to use an alternative lethal injection procedure," and so we explained that "[u]nder these circumstances a grant of injunctive relief could not be seen as barring the execution of Hill's sentence." *Id.,* at 580–581.

Here, by contrast, the warden and the commissioner are not free to use an alternative to lethal injection—so if Nance succeeds, they cannot carry out his sentence. And though the Court contends otherwise, that consequence "switches Nance's claim to the habeas track." *Ante,* at 8. An inmate can use §1983 actions to challenge many, if not most, aspects of prison administration. But when a challenge would prevent a State from enforcing a conviction or sentence, the more rigorous, federalism-protective requirements of habeas apply. The Court finds a way around those requirements with a theory at odds with the very federalism interests they are designed to protect: that an injunction barring the State from enforcing a sentence according to state law does not really bar the State from enforcing the sentence because the State can pass a new law.

Unlike the Court, I would take state law as we find it in determining whether a suit sounds in habeas or §1983. The Court worries that this approach would make the appropriate federal vehicle "depend on the vagaries of state law." *Ante,* at 11. Some States, like Georgia, provide for a single method of execution by statute; other States, like Alabama, allow for more flexibility. See *ibid.* So if state law determined the vehicle, an inmate in Georgia would have to challenge the lethal injection method in habeas, while an inmate in Alabama could use §1983. But that does not illustrate "the vagaries of state law"; it is an unremarkable consequence of federalism. States make different choices in

BARRETT, J., dissenting

exercising their power to define punishment, and the law
has long recognized a sovereign's interest in mandating a
particular form of capital punishment. Cf. 4 W. Blackstone,
Commentaries on the Laws of England 397 (1769) (a sheriff
would be "guilty of felony" if he "alter[ed] the manner of the
execution"). Habeas is appropriate in Georgia because un-
der Georgia law, to enjoin execution by lethal injection is to
enjoin enforcement of the sentence itself. See Ga. Code
Ann. §17–10–38(a) ("All persons who have been convicted
of a capital offense and have had imposed upon them a sen-
tence of death shall suffer such punishment by lethal injec-
tion"). In Alabama, enjoining execution by lethal injection
does not have the same effect. See Ala. Code §15–18–82.1(c)
(2018) (permitting execution "by any constitutional method
of execution" if the other methods provided for by statute
are held unconstitutional). The two sovereigns have made
different choices about how to define punishment, and fed-
eral law is designed to respect the choice of each.

I understand the impulse to find a way out of habeas and
into §1983. In States like Georgia, a claim under *Bucklew*
v. *Precythe*, 587 U. S. ___ (2019), alleging an alternative
method of execution not presently authorized by state law
would be difficult to assert in a federal habeas application
because it would "almost inevitably collide with the second-
or-successive bar." *Ante*, at 12. But we acknowledged that
very possibility in *Bucklew*. 587 U. S., at ___ (slip op., at
19). And more importantly, the unavailability of federal ha-
beas relief does not justify recourse to §1983. Cf. *Wilkinson*
v. *Dotson*, 544 U. S. 74, 87–88 (2005) (Scalia, J., concurring)
("[A] prisoner who wishes to challenge the length of his con-
finement, but who cannot obtain federal habeas relief be-
cause of the statute of limitations or the restrictions on suc-
cessive petitions, cannot use the unavailability of federal
habeas relief in his individual case as grounds for proceed-
ing under §1983" (citations omitted)). The habeas statutes
funnel such challenges to the state courts—which are, after

BARRETT, J., dissenting

all, "the principal forum" for them.  *Harrington* v. *Richter*, 562 U. S. 86, 103 (2011).

For these reasons, I respectfully dissent.